Philip VANCE, petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. A07–1552.

Supreme Court of Minnesota.

July 10, 2008.

Philip Vance, MCF–Stillwater, Bayport, MN, for Pro Se Appellant.

Lori Swanson, Attorney General, St. Paul, MN, James C. Backstrom, Dakota County Attorney, Kevin J. Golden, Assistant County Attorney, Hastings, MN, for Respondent.

## OPINION

PAGE, Justice.

Appellant Philip Vance appeals the district court's summary denial of his petition for postconviction relief. We affirm.

Vance was convicted in 2004 of the December 22, 2002, murder of Khaled Al–Bakri.[1] In his direct appeal, Vance asserted that the district court erred by (1) excluding alternative-perpetrator evidence and reverse-*Spreigl* evidence; (2) allowing, without providing a cautionary instruction, testimony that State witnesses were fearful; (3) failing to give an instruction regarding unredacted police statements that suggested Vance was untruthful; and (4) excluding a letter from Al–Bakri's brother to a witness for the State. *See State v. Vance*, 714 N.W.2d 428, 436–44 (Minn. 2006). Vance also claimed that he had newly discovered evidence in the form of a recantation by a witness for the State and that the prosecutor committed misconduct by crying during the trial and closing arguments. *Id.* at 444. We found no prejudicial errors and affirmed the conviction. *Id.*

In May 2007, Vance filed a petition for postconviction relief with the district court. The district court summarily denied the petition, concluding that "[t]he claims in the petitions were either raised and decided on appeal already, or were known and not raised at the time of appeal." Additionally, according to the district court, Vance's claims for relief "are baseless, lack specificity and are without merit."

Vance argues on appeal that he is entitled to postconviction relief based on (1) ineffective assistance of trial and appellate counsel; (2) newly discovered evidence of witness recantation; (3) the insufficiency of the indictment in light of recanted witness testimony; (4) prosecutorial misconduct; (5) failure to submit his charge pursuant to Minn.Stat. § 609.11 (2006) to the grand jury or the jury; and (6) cumulative errors preventing him from receiving a fair trial. He further argues that the district court abused its discretion by denying him an evidentiary hearing. We affirm.

I.

When reviewing postconviction proceedings, we are to " 'extend a broad review of both questions of law and fact.' " *Butala v. State*, 664 N.W.2d 333, 338 (Minn.2003) (quoting *State ex rel. Pittman v. Tahash*, 284 Minn. 365, 368, 170 N.W.2d 445, 447 (1969)). We review legal issues de novo, but our review of factual matters is limited to whether there is sufficient evidence in the record to sustain the postconviction court's findings. *Id.* A petitioner has the burden of establishing by a preponderance of the evidence facts that would warrant relief. *Blom v. State*, 744 N.W.2d 16, 17 (Minn.2007).

A postconviction court is required to hold an evidentiary hearing only

---

1. The facts surrounding the murder are detailed in this court's opinion affirming Vance's conviction. *See State v. Vance*, 714 N.W.2d 428 (Minn.2006).

when there are disputed material facts that must be resolved to determine the merits of the postconviction claims. *King v. State*, 562 N.W.2d 791, 794 (Minn.1997). In reviewing a postconviction court's denial of relief without an evidentiary hearing, "we resolve any doubts about whether an evidentiary hearing is required in favor of the petitioner." *Patterson v. State*, 670 N.W.2d 439, 441 (Minn.2003). However, no evidentiary hearing is required if the petition and record conclusively show that the petitioner is not entitled to relief. *Id.*

▮▮▮ "Once a direct appeal has been taken, all claims raised in that appeal, all claims known at the time of that appeal, and all claims that should have been known at the time of that appeal will not be considered in a subsequent petition for postconviction relief." *Leake v. State*, 737 N.W.2d 531, 535 (Minn.2007) (citing *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976)). There are two exceptions to this rule: "(1) if a novel legal issue is presented, or (2) if the interests of justice require review." *White v. State*, 711 N.W.2d 106, 109 (Minn.2006).

## II.

▮▮▮ Vance argues that he received ineffective assistance of both trial and appellate counsel. Claims of ineffective assistance of counsel involve mixed questions of law and fact, which we review de novo. *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn.2003). A petitioner is entitled to an evidentiary hearing to develop the facts supporting his ineffective assistance claims only if he alleges facts in the petition that, if proved, would "affirmatively show that his attorney's representation fell below an

objective standard of reasonableness, and that but for the errors, the result would have been different." *Wilson v. State*, 582 N.W.2d 882, 885 (Minn.1998). If no further facts need to be developed, the claim should be raised on direct appeal. *See Robledo–Kinney v. State*, 637 N.W.2d 581, 585 (Minn.2002).

▮▮▮ Vance first contends that he did not receive a fair trial due to the ineffective assistance of trial counsel, based on his trial counsel's failure to conduct an investigation, to talk to any witnesses, and to call any witnesses to testify on his behalf.[2] However, Vance has not alleged facts that, if proved, would "affirmatively show that his attorney's representation fell below an objective standard of reasonableness, and that but for the errors, the result would have been different." *Wilson*, 582 N.W.2d at 885. Thus, the postconviction court was not required to hold an evidentiary hearing to develop the record. *Id.*

The essence of Vance's claim is that his trial counsel did not interview or otherwise talk to a number of the State's witnesses before trial. Those witnesses include Colleen McManus, Maynard Cross, Eric Griffin, Melissa Stites, Regina Hagerman, Geronimo Estrada, Isaac Hodge, John Nunn, Dontay Reese, Tyrone Crawford, and Kathleen Johnson. Vance does not explain, however, how the failure to interview or otherwise talk to these witnesses before trial resulted in prejudice to him, nor is it apparent from the record. Nor does Vance explain how prejudice could have resulted, considering that his trial counsel conducted cross-examinations of the State's trial witnesses, including Mc-

---

**2.** In a document titled "Amendment to Post Conviction" filed with this court on November 20, 2007, Vance argues that his trial counsel violated lawyer-client confidentiality and therefore provided ineffective assistance of counsel. However, Vance did not raise

this issue before the postconviction court, and the facts asserted in support of the argument have not been considered by the postconviction court. Therefore, we decline to address it here. *See Azure v. State*, 700 N.W.2d 443, 447 (Minn.2005).

Manus, Griffin, Stites, Hagerman, Hodge, Nunn, Reese, and Crawford. Absent such explanations, we conclude that Vance has failed to allege facts affirmatively showing that, but for his trial counsel's alleged errors, the result of his trial would have been different. Therefore, there is no basis to conclude that his trial counsel was ineffective with respect to this claim.

■ Further, the allegations that Vance's trial counsel failed to conduct an investigation, talk to any witnesses, and call any witnesses to testify are all claims the underlying facts of which Vance either knew or should have known at the time of his direct appeal. Because Vance either knew or should have known of the claims at the time of his direct appeal and the claims could have been adjudicated on the basis of the trial record and briefs, the claims are barred under the rule set out in *Knaffla*, 309 Minn. at 252, 243 N.W.2d at 741. Therefore, Vance's ineffective-assistance-of-trial-counsel claim fails.

■ Vance also argues that his appellate counsel was ineffective for failing to raise on direct appeal his trial counsel's ineffective assistance. When a petitioner bases his ineffective-assistance-of-appellate-counsel claim on appellate counsel's failure to raise an ineffective-assistance-of-trial-counsel claim, he first must show that trial counsel was ineffective. *Zenanko v. State*, 688 N.W.2d 861, 865 (Minn.2004). Here, as noted above, Vance has failed to make such a showing. We therefore conclude that Vance's ineffective-assistance-of-appellate-counsel claim fails.

### III.

■ Vance next asserts that John Martin and Dontay Reese, two of the State's trial witnesses, have, by affidavit, recanted part of their trial testimony. Although evidentiary hearings usually are necessary to evaluate the reliability of the recantation, there must be sufficient "indi-

cia of the trustworthiness" of the recantation to merit a hearing. *State v. Ferguson*, 742 N.W.2d 651, 660 (Minn.2007).

■ We conclude that Vance is not entitled to an evidentiary hearing based on his claim of recanted testimony. With respect to Martin's affidavit, we do not believe there are sufficient "indicia of the trustworthiness" of his recantation. *Id.* The recantation comes several years after the murder and after Martin has testified under oath. At trial, Martin testified that he met Vance and Dominic Johnson at the Radisson bar in downtown St. Paul around 7 or 8 p.m. on December 22, 2002. According to Martin's testimony, while neither Vance nor Johnson mentioned a robbery or going to South St. Paul, "[Vance and Johnson] made a phone call to go to South St. Paul * * * on [their] way to leave." Vance and Johnson told Martin that they were calling "Yvonne and Nicole," whom Johnson called the "South St. Paul girls." The three men left the bar around 8:30 or 9 p.m. Before getting on his bus, Martin saw Yvonne and Nicole's car, a dark blue four-door Corsica, come around the block. In his affidavit, Martin states that, contrary to his testimony, the day he was with Vance and Johnson at the Radisson bar was not a Sunday, which means it could not have been the night of the shooting. According to Martin, he now remembers—after talking to Vance—that he and Vance discussed going to a liquor store, so they could not have met at the Radisson bar on December 22, 2002, which was a Sunday. There is no explanation, however, as to why his memory is better now than it was at the time of trial. Further, at least one other witness at trial testified that Vance was present at the Radisson bar on Sunday evening, December 22, 2002. No part of that witness's testimony has been recanted.

We likewise do not believe there are sufficient indicia of trustworthiness in Reese's affidavit to merit a hearing. Reese testified at trial that, while he and Vance were incarcerated at the Dakota County jail, Vance had admitted to him details of how the shooting of Al–Bakri occurred. In his affidavit, Reese now states that Vance never confessed to the murder and that Reese made up the details set out in his testimony from talking with Vance about witnesses that they both knew who were involved in the murder investigation and from reading Vance's "court transcript involving his charges" that was filed in the jail library.[3] Reese further states that, in order to get time reduced from his incarceration, he lied when he testified that Vance confessed to the murder. However, Reese's assertion regarding reading the transcript in the jail library is vague, and it is not clear how he would have read a transcript before testifying at trial. Moreover, Hodge, Nunn, and Estrada, who were incarcerated with Vance, provided testimony corroborating Reese's trial testimony. Therefore, Reese's recantation is not reasonably trustworthy, and the postconviction court did not err in not holding an evidentiary hearing.

We also conclude that Vance is not entitled to a new trial based on Martin's and Reese's affidavits. To obtain a new trial on the basis of recanted testimony, three requirements must be met. *Pippitt v. State*, 737 N.W.2d 221, 226 (Minn. 2007). First, the court must be " 'reasonably well-satisfied' " that the recanted testimony was false. *Id.* at 226–27 (quoting *Opsahl v. State (Opsahl I)*, 677 N.W.2d 414, 423 (Minn.2004) (emphasis added)). We have said that a court must be " 'rea-sonably certain that the recantation is genuine' " before this first prong is met. *Opsahl v. State (Opsahl II)*, 710 N.W.2d 776, 782 (Minn.2006) (quoting *State v. Walker*, 358 N.W.2d 660, 661 (Minn.1984)). Second, the petitioner must show that the jury might have reached a different conclusion without the recanted testimony. *Pippitt*, 737 N.W.2d at 227. Third, the petitioner must show that he was taken by surprise at trial or did not know of the falsity until after trial. *Id.* The first two requirements are compulsory, but the third is not. *Id.*

Here, neither Martin's nor Reese's alleged recantation satisfies the second requirement set out in *Pippitt*. Vance has not shown that, absent Martin's testimony, the jury might have reached a different conclusion. Martin was not the only one to testify that Vance was at the Radisson bar the night of the murder, as at least one other witness also placed him there. Stites, the head bartender at the Radisson bar, testified that Vance, Johnson, and a third man came into the bar around 7:30 p.m. on December 22, the night of the murder. Interestingly, the affidavit submitted by Townsend in this postconviction proceeding also places Vance at the Radisson bar on December 22. Moreover, Griffin testified that he talked to Vance at The Buttery bar in St. Paul sometime after 10 p.m. on December 22, at which time Vance told him "he had did a robbery and it had gone bad, and the guy he was robbing, he had f——ed him up." McManus, the night manager at The Buttery, testified that Vance and Johnson arrived at the bar sometime between 10:15 and 10:30 on the night of December 22. She further testified that Vance indicated to her through motions that he had shot someone. There-

---

3. It is not clear what Reese is talking about when he references court transcripts. However, if the State is correct as to the date on which it claims the court transcripts were prepared, it appears that Reese could not have read the transcripts before testifying as he claims. Thus, it is not clear that Reese's trial testimony was false.

fore, Vance is unable to show either that absent Martin's trial testimony or that had Martin testified at trial consistent with his affidavit, the result would have been different. Thus, this claim does not warrant relief.

As for Reese's affidavit, Reese claims that his testimony was based on having read Vance's court transcript before he testified at Vance's trial and not, as he testified, on what Vance told him. At trial, Reese testified that while in the Dakota County jail with Vance before Vance's trial he had numerous conversations with Vance about Vance's involvement in a murder. Vance allegedly told Reese that he, Johnson, and Martin had been at a bar and left after Johnson called two women, named Yvonne and Tiffany or Nikki, to get a ride from the bar to Johnson's cousin's house. Vance also told Reese that the women drove a blue Corsica or Accord. Vance and Johnson then met another man and went to a "mom-and-pop store," which Vance and Johnson went inside to rob. During the robbery, Johnson said Vance's name, so Vance shot the clerk. Vance told Reese he used a "deuce-deuce" to kill the clerk, which Reese interpreted to mean a .22 caliber handgun. With regard to shooting the clerk, Vance told Reese that "it wasn't supposed to go down like that" and "[Johnson] said my name and it wasn't supposed to go down like that. I was zooted, I was drunk and I gave the dude five. And then we got the money and got lit."

Vance has failed to show that the outcome of the trial might have been different absent Reese's testimony. Several other witnesses testified about interactions they had with Vance in which Vance implicated himself in the murder. In addition to Griffin's and McManus's testimony, there was testimony at trial that, in the course of an undercover investigation, Vance admitted to Stites that he "shot a guy in the back five times" on the "south side" 2 weeks before their conversation. As noted above, Hodge, Nunn, and Estrada also testified that, while incarcerated with Vance, he told them separately about his involvement in the murder-robbery. Tellingly, Estrada testified that Vance specifically told him what had been taken from the store during the robbery, the list of which matched the actual items taken and, according to law enforcement, had not been publicly disclosed during the investigation. In light of this evidence, we cannot conclude that the jury might have reached a different result without Reese's trial testimony. As a result, Vance has not shown that he is entitled to relief.

Therefore, we conclude that the postconviction court did not err when it denied Vance a hearing on the recanted testimony of Martin and Reese. We also hold that Vance is not entitled to a new trial on the basis of this recanted testimony.

### IV.

■■■■ Next, Vance claims that he has newly discovered evidence in the form of affidavits suggesting either that some of the witnesses at his grand jury proceedings and trial lied or that Vance was not involved in Al–Bakri's murder. A petitioner who asserts that he is entitled to a new trial based on newly discovered evidence must show that:

(1) the evidence was not known to him or his counsel at the time of trial; (2) the failure to learn of the new evidence was not because of a lack of diligence; (3) "the evidence is material (or as we have sometimes said, is not impeaching, cumulative or doubtful)"; and (4) the evidence will probably produce an acquittal at a retrial or a more favorable result for the [petitioner].

*Pippitt,* 737 N.W.2d at 226 (quoting *Race v. State,* 417 N.W.2d 264, 266 (Minn.1987)).

The burden of proof for a postconviction evidentiary hearing is lower than the burden for new trial. *See Wilson v. State,* 726 N.W.2d 103, 107 (Minn.2007).

The affidavits come from Maynard Cross, Michael White, Edward Townsend, and Trevor Crawford. We need not, however, detail the information contained in the affidavits to resolve Vance's claim because Vance has failed to show that the information alleged to constitute new evidence in these affidavits was not known to him or his counsel at the time of trial or that the failure to learn of that information was not due to a lack of diligence. Because Vance failed to make such a showing, his claim fails.[4] *See Pippitt,* 737 N.W.2d at 226. We therefore conclude that the postconviction court did not err when it denied Vance relief on his newly discovered evidence claim.[5]

## V.

 Vance also asserts that he is entitled to postconviction relief for a host of other reasons. First, he claims that the prosecutor committed misconduct when she (1) inflamed the passions of the jury during her closing argument by commenting on Vance's failure to testify or provide an alibi; (2) commented on the State's witnesses' fear of Vance and how Vance disrupted the lives of the witnesses; (3) withheld exculpatory evidence; and (4) and misstated evidence. Second, he claims that the trial court erred when it failed to submit his charge pursuant to Minn.Stat. § 609.11 to the grand jury or the jury.

Third, he argues that cumulative errors prevented him from receiving a fair trial. Our review of the record leads us to conclude that all of these claims were either known or should have been known to Vance at the time of his direct appeal but were either not raised or were not raised successfully. Thus, each of these claims is barred under *Knaffla.* Neither exception to the *Knaffla* rule applies to any of these claims. None of the claims involves legal issues so novel that they were unavailable at the time of direct appeal, and our review of the record satisfies us that the interests of justice do not require review. Therefore, the postconviction court did not err in denying relief on these claims.

Because Vance has failed to show that he is entitled to postconviction relief on any of his claims, we affirm the summary denial of his petition for postconviction relief.

Affirmed.

MAGNUSON, C.J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

4. Because we conclude that Cross's affidavit does not entitle Vance to postconviction relief, as it does not meet the test for recanted testimony, we also conclude that Cross's affidavit does not render Vance's indictment insufficient. *See Opsahl II,* 710 N.W.2d at 782 (stating that "a simple statement contradicting earlier testimony" fails to meet the first prong of the test for recanted testimony).

5. We note that Vance's claim for relief also fails under the falsified testimony analysis because we are not reasonably well-satisfied that the testimony from those witnesses was false or that the "newly discovered" evidence in the form of affidavits is genuine. *See Pippitt,* 737 N.W.2d at 226–27; *Opsahl II,* 710 N.W.2d at 782. Further, Vance has failed to show that the jury might have reached a different conclusion without the alleged false testimony. *See Pippitt,* 737 N.W.2d at 227.