Jermaine **FERGUSON**, petitioner, Appellant,

v.

**STATE of Minnesota, Respondent.**

No. A09–1483.

Supreme Court of Minnesota.

March 25, 2010.

---

Jermaine Ferguson, Rush City, MN, pro se.

Lori Swanson, Attorney General, St. Paul, Minnesota; and Michael O. Freeman, Hennepin County Attorney, Michael K. Walz, Assistant County Attorney, Minneapolis, MN, for respondent.

## OPINION

GILDEA, Justice.

On December 1, 2005, Jermaine Ferguson was convicted of first-degree murder in violation of Minn.Stat. §§ 609.185(a)(1), 609.05 (2008), and attempted first-degree murder in violation of Minn.Stat. §§ 609.185(a)(1), 609.17, subd. 1, 609.05 (2008), for his role in the shooting that caused the death of Joseph Papasodora and injuries to Gordon Hill and Ernest Houle. *State v. Ferguson (Ferguson I )*, 742 N.W.2d 651, 653 (Minn.2007). Ferguson brought a direct appeal but later moved for a stay and remand for postconviction proceedings, which we granted. *Id.* at 656. The postconviction court denied Ferguson's postconviction petition, Ferguson appealed, and the direct appeal and the postconviction appeal were consolidated. *Id.* On appeal, we affirmed Ferguson's conviction and the postconviction court's denial of postconviction relief. *Id.* at 660. Ferguson brought a second petition for postconviction relief on June 10, 2009. The postconviction court denied the petition without granting an evidentiary hearing and Ferguson appealed. Because we hold that the court should have conducted an evidentiary hearing, we reverse.

A description of the facts of this case is set forth in our opinion written for Ferguson's first appeal. *See Ferguson I*, 742 N.W.2d at 653–56. This opinion will summarize only those facts necessary to resolve this appeal. The shooting took place the morning of December 7, 2004, at an apartment located on 12th Avenue South in Minneapolis. The evidence established that three men burst into the apartment and opened fire on the occupants. Joseph Papasodora was killed, and Ernest Houle and Gordon Hill were both injured by the gunfire.

At trial, Judonna Parker testified that she drove her fiancé, Kentrell Green, and two of his associates, Jermaine Ferguson and Johntaye Hudson, to and from the apartment on the morning of the shooting. The men wanted to go to the apartment after they learned that Collin Goodwin, who lived in the apartment, beat up one of their friends, Andre Miller. None of the men talked with Parker about what they planned to do, but while she was making a U–turn after dropping the men off, Parker heard 8 to 10 "real quick" noises that "sounded like gunshots."

Green testified at trial that he, Hudson, and Ferguson decided, after hearing about the assault on Miller, to confront the man they believed had assaulted him. Green testified that Parker drove them to the building and that he, Hudson, and Ferguson went up to the apartment. Ferguson kicked in the door of the apartment on 12th Avenue South and they all began shooting.

The jury found Ferguson guilty of first-degree murder and attempted first-degree murder. In his first appeal, Ferguson argued that the postconviction court erred in denying his petition for postconviction relief without an evidentiary hearing. *Ferguson I*, 742 N.W.2d at 659. In his petition, Ferguson alleged that Green had recanted his trial testimony. *Id.* Fergu-

son offered as evidence a memorandum written by Michael Grostyan, a defense investigator. *Id.* The memorandum provided:

It should be noted that on May 2, 2006, at 1:00 p.m., [Ferguson's trial counsel] and Michael Grostyan interviewed Kentrell Green, at Stillwater State Prison.

Mr. Green informed us that our client, Jermaine Ferguson, was not present at the scene of the murder that he is serving time for. He indicated that he told the authorities and I believed [sic] he testified also that Jermaine Ferguson was present. His explanation for doing that was that the police threatened to take the children away from the children's mother, Judonna Parker, and they also threatened to send Ms. Parker to prison for her potential involvement.

*Id.* We agreed with the district court "that the Grostyan memorandum carrie[d] insufficient indicia of trustworthiness of the recantation to merit a hearing" and affirmed the denial of Ferguson's petition, but "without prejudice." *Id.* at 660. We said that "Ferguson may file a new petition to address this issue based on a more satisfactory showing of a genuine recantation of trial testimony." *Id.*

Ferguson filed a second postconviction petition on June 10, 2009. In this petition, Ferguson offered the affidavit of Green. In the affidavit, Green states that he was "not fully truthful on the facts" of the case because the police told him he "would lose [his] son and do life in prison if [he] didn't give the police" Jermaine Ferguson. He explained it in the following terms: "So from my stress and my lack of knowledge in the law, I lied and said that Jermaine Ferguson[ ] was with me at the sceen [sic] of the crime, which he never was and I told the police that the first time."

The postconviction court found that Ferguson had "not offered any more evidence of genuine recantation" than in his earlier postconviction petition and, without granting an evidentiary hearing, summarily denied the petition. This appeal follows.

## I.

■ As a preliminary matter, the State argues that Ferguson's petition for postconviction relief is *Knaffla*—barred because we have already reviewed the same claim based on the same evidence. *See State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). The State also cites Minn.Stat. § 590.04, subd. 3 (2008), which provides that "[t]he court may summarily deny a second or successive petition for similar relief on behalf of the same petitioner and may summarily deny a petition when the issues raised in it have previously been decided by the Court of Appeals or the Supreme Court in the same case." The State argues that because the Green affidavit provides, in substance, little more detail than that in the Grostyan memorandum, we should treat Ferguson's petition as essentially an attempt to relitigate the issues from the first postconviction proceeding. We disagree.

In *Ferguson I*, we affirmed the summary denial of the first petition "without prejudice" and stated that "Ferguson may file a new petition to address this issue [of Green's recantation] based on a more satisfactory showing of a genuine recantation of trial testimony." *Ferguson I,* 742 N.W.2d at 660. Ferguson's second petition includes an affidavit from Green, the allegedly recanting witness. A signed and notarized affidavit from Green himself, assuming it is genuine, provides significantly different evidence than the unsworn Grostyan memorandum, which contained only hearsay allegations. For these reasons, we hold that Ferguson's petition for post-

conviction relief is not *Knaffla*-barred or barred under Minn.Stat. § 590.04, subd. 3.

## II.

■■ Ferguson argues that the postconviction court abused its discretion in summarily denying his petition for postconviction relief without granting him at least an evidentiary hearing to evaluate the credibility and import of Green's recantation. We review postconviction proceedings to determine whether the evidence was sufficient to support the postconviction court's findings and do not disturb the postconviction court's decision unless there was an abuse of discretion. *King v. State,* 649 N.W.2d 149, 156 (Minn.2002). We review issues of law de novo. *State v. Turnage,* 729 N.W.2d 593, 597 (Minn.2007).

Minnesota Statutes § 590.04, subdivision 1 provides that a petitioner is entitled to an evidentiary hearing, "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn.Stat. § 590.04, subd. 1 (2008). We have "interpreted this section to require the petitioner to allege facts that, if proven, would entitle him to the requested relief." *Opsahl v. State,* 677 N.W.2d 414, 423 (Minn. 2004). Our precedent recognizes that "doubts as to whether to conduct an evidentiary hearing should be resolved in favor of the party requesting the hearing." *King,* 649 N.W.2d at 156.

■■ In order to determine whether the postconviction court erred in not conducting an evidentiary hearing, we look first to see whether Ferguson's petition alleged facts, that if proven true, would entitle him to relief, which in this case is a new trial.

A petition for postconviction relief warrants a new trial based on the recantation of trial testimony if the petition satisfies the three-prong test known as the *Larrison* test. *Turnage,* 729 N.W.2d at 597; *State v. Caldwell,* 322 N.W.2d 574, 584 (Minn.1982). To grant a new trial under the *Larrison* test, the postconviction court must determine that the following three prongs are met: "(1) the court must be reasonably well-satisfied that the trial testimony was false; (2) without the false testimony, the jury might have reached a different conclusion; and (3) the petitioner was taken by surprise at trial or did not know of the falsity until after trial." *Ferguson v. State,* 645 N.W.2d 437, 442 (Minn. 2002).[1] While the first two prongs must be met for the petitioner to be entitled to a new trial, the third prong is a relevant factor to be considered, but not an "absolute condition precedent" for granting a new trial. *See id.* at 445; *accord Opsahl,* 677 N.W.2d at 423.

## A.

■■ Under the first prong of the *Larrison* test, in order for the court to order a new trial, the postconviction court "must be reasonably well-satisfied that the trial testimony was false." *Ferguson,* 645 N.W.2d at 442. The facts Green alleges in his affidavit, if true, would suggest that Green's trial testimony was false. As the State correctly points out, however, a simple statement contradicting earlier testimony is insufficient to establish the petitioner's right to a new trial. *See State v. Walker,* 358 N.W.2d 660, 661 (Minn.1984). The first prong of *Larrison* is met only when the court is "reasonably certain that

1. The defendant in *Ferguson v. State,* 645 N.W.2d 437 (Minn.2002) is Alonzo Ferguson, and that case has no relation to Jermaine Ferguson's case. For clarity, we refer to Alonzo Ferguson's case as *Ferguson* and Jermaine Ferguson's first postconviction appeal as *Ferguson I.*

the recantation is genuine." *Walker*, 358 N.W.2d at 661.

■ An evidentiary hearing is often necessary to determine whether a recantation is genuine. *See Wilson v. State*, 726 N.W.2d 103, 107 (Minn.2007) ("In this case, an evidentiary hearing is appropriate because it is difficult if not impossible to test Wallace's conflicting statements without examining Wallace under oath."). In *Wilson*, we noted that new trials based on witness recantations are "disfavored," but we repeated our caution that "postconviction courts not ... determine that a recantation is unreliable without first taking the opportunity to evaluate the credibility of the witness at an evidentiary hearing." *Id.; see also Opsahl*, 677 N.W.2d at 423–24 ("By concluding that the recantations were unreliable without first evaluating the credibility of the witnesses at an evidentiary hearing, the postconviction court misapplied Minn.Stat. § 590.04 and, therefore, abused its discretion.").

The State acknowledges that a hearing is usually required in order for the postconviction court to evaluate the credibility of a recantation. But, relying on *Vance v. State*, 752 N.W.2d 509 (Minn.2008), the State contends that such a hearing was not needed in this case because Green's affidavit does not provide "sufficient indicia of trustworthiness" to warrant an evidentiary hearing. *Id.* at 515. We disagree.

In *Vance*, we concluded that the affidavits of two witnesses recanting their trial testimony lacked "sufficient indicia of trustworthiness" to merit an evidentiary hearing under the first prong of *Larrison*. 752 N.W.2d at 514–15. We determined that the first affidavit, in which the witness claimed he made a mistake in his testimony as to the date he saw the petitioner at a bar, did not provide sufficient indicia of trustworthiness because it came several years after the murder and after the witness had testified, it provided no explanation as to why the witness's memory would be better at the time of executing the affidavit than at trial, and there was testimony from another witness that corroborated the witness's original testimony. *Id.* at 514. The second affidavit was offered from a jailhouse informant who testified at trial that the petitioner had confessed to the crime. *Id.* at 515. In the affidavit, the informant recanted and said that the petitioner never confessed to him and that he got the facts for his trial testimony from reading a court transcript, found in the jail library, involving petitioner's charges. *Id.* We determined this affidavit to be lacking in sufficient indicia of trustworthiness because there would have been no way for the informant to access the court transcript in the jail library before he testified at trial and because others who were incarcerated with the petitioner corroborated the informant's trial testimony. *Id.*

While Green's affidavit raises credibility issues, particularly because the version of the story that Green testified to at trial was corroborated by other evidence, the Green affidavit has more "indicia of trustworthiness" than did the affidavits in *Vance*. Unlike the affidavits in *Vance*, Green's affidavit gives a reason for his change in testimony, which, if believed, could arguably support a finding that Green's recantation was genuine, and it is also undisputed that Green is the source for the information he provides. *See Vance*, 752 N.W.2d at 514–15.

The State also suggests that because we concluded that the Grostyan memorandum was insufficient to warrant an evidentiary hearing, the same must be true of the Green affidavit given that the memorandum and affidavit recount essentially the same information. We held in the first appeal that Ferguson needed to make a greater showing of a "genuine recantation"

to warrant an evidentiary hearing. *Ferguson I,* 742 N.W.2d at 660. The mere hearsay report of Green's recantation contained in an unsworn memorandum was not sufficient to "justify the expense and risk of transporting the petitioner to an evidentiary hearing." *Id.* But the record now contains a sworn affidavit from Green himself, and this affidavit does not raise the hearsay concerns presented with the unsworn memorandum from an investigator who merely recounted what Green allegedly reported to him.

 Mindful that Ferguson's "burden of proof for a postconviction evidentiary hearing is lower than his burden for a new trial" and that doubts about whether to conduct an evidentiary hearing "should be resolved in favor of granting the hearing," *Wilson,* 726 N.W.2d at 107, we hold that the postconviction court should have conducted an evidentiary hearing before it determined whether Ferguson met the first prong of the *Larrison* test.

### B.

That a hearing should have been conducted in order to determine whether the first prong of the *Larrison* test was met, however, does not by itself require reversal. This is so because Ferguson must meet both the first and second prongs of *Larrison* in order to show that he is entitled to relief. *See Turnage,* 729 N.W.2d at 600. If Ferguson has not met the second prong, the postconviction court cannot be said to have erred in denying Ferguson's petition. *See id.* ("Because Turnage did not meet the second prong of the *Larrison* test, the postconviction court did not err in denying Turnage's petition and his request for an evidentiary hearing."); *Doppler v. State,* 771 N.W.2d 867, 872–73 (Minn.2009) (affirming the district court's denial of an evidentiary hearing on the grounds that, even without the recanting witness's testi-

mony, the jury would have been unlikely to acquit the defendant where the recanting witness was not present at the scene of the crime and only testified as to incriminating conversations he had with the defendant and where there were other eyewitnesses who testified as to the defendant's role in the crime).

In order to meet the second prong of *Larrison,* Ferguson must show that a jury "might have found [him] not guilty if [Green] had not testified." *Turnage,* 729 N.W.2d at 599. Green was the only eyewitness to the shooting who testified at trial, and he testified that Ferguson was involved in the shooting. Specifically, Green testified that Ferguson kicked in the door to the apartment and fired the first shot. The State correctly notes that other witnesses, including Parker, corroborated Green's testimony to the extent these witnesses also described seeing Ferguson going in and coming out of the apartment building. But the State does not specifically argue that Ferguson has failed to allege facts that, if proven true, would meet the second *Larrison* prong. Given the importance of Green's testimony at trial, and in the absence of any findings under the second prong from the postconviction court, we cannot say that the record conclusively shows that Ferguson "is entitled to no relief." Minn.Stat. § 590.04, subd. 1.

### C.

 To satisfy the third prong of the *Larrison* test, Ferguson must show that he was taken by surprise by Green's false trial testimony or that he did not know of the falsity until after trial. *See Ferguson,* 645 N.W.2d at 444. Green testified at trial that Ferguson was with him at the crime scene. Ferguson therefore knew at trial whether Green's testimony was false. *See id.* at 445 (discussing circumstances like

this one where an eyewitness or an accomplice recants and noting that "surprise regarding the falsity of the testimony is never a possibility because a defendant would have personal knowledge of the circumstances"). But we have held that the third prong of *Larrison* is not a condition precedent for relief. *Opsahl*, 677 N.W.2d at 423; *Ferguson*, 645 N.W.2d at 444–45. Thus, while the failure to make any showing that he was unfairly surprised by the claimed falsity of Green's testimony is a relevant factor that weighs against granting Ferguson relief, it is not dispositive. *See Ferguson*, 645 N.W.2d at 445.

Based on the record and the facts Ferguson alleges, we hold that the postconviction court erred in summarily denying Ferguson's postconviction petition without granting him an evidentiary hearing to evaluate the credibility of Green's recantation. Accordingly, we reverse and remand to the postconviction court for an evidentiary hearing.

Reversed and remanded.