**STATE of Minnesota, Respondent,**

v.

**Erik Lerone JEFFRIES, Appellant.**

**No. A09–1391.**

Court of Appeals of Minnesota.

Aug. 31, 2010.

---

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Paul R. Scoggin, Assistant County Attorney, Minneapolis, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Susan J. Andrews, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by STAUBER, Presiding Judge; LANSING, Judge; and PETERSON, Judge.

## OPINION

LANSING, Judge.

In this appeal from a conviction of felony domestic assault, Erik Jeffries argues that his continued prosecution and conviction, following the rejection of a guilty plea that the district court had accepted in open court, violated the constitutional protection against double jeopardy. We affirm.

## FACTS

Erik Jeffries was charged with felony domestic assault resulting from a January 2008 incident that followed two prior domestic-assault convictions within the previous ten years. The state provided notice to Jeffries that his criminal record qualified him as a career offender and that the state would seek an upward departure on that basis.

In a rule 15 petition, Jeffries agreed to plead guilty to the charged offense and to acquiesce in an upward durational departure in return for the state's joining in a sentencing recommendation for a stay of execution of Jeffries's sentence and three years' probation. *See* Minn. R.Crim. P. 15.01 (setting forth guilty-plea procedure for felony charge). The negotiated stayed sentence of forty-eight months was one year above the top of the presumptive range, but below the statutory maximum of sixty months. As part of the plea negotiation, the state agreed that Jeffries could be released from custody pending the sentencing hearing.

At the plea hearing, the prosecutor described the plea agreement and explained that the basis for the upward departure was Jeffries's "significant criminal histo-

ry," as well as the nature of the injury to the victim. Jeffries presented his written plea petition, placed the required waivers on the record, and testified to the factual basis for the guilty plea. He agreed, when asked by the prosecutor, that the nature of the injury made his offense "a little more serious," but he did not discuss his criminal history as it related to the career-offender departure.

The district court stated at the plea hearing that "based upon the facts on the record, I'll accept your plea of guilty and find you guilty of the fifth-degree domestic assault.... So you are convicted of that." The district court continued, stating it was "going to go ahead with the joint agreement of the parties and release [Jeffries]," subject to conditions. When outlining the conditions of release, the district court said, "[Y]ou don't want to mess up because ... it's just going to put you in a worse situation and everything."

After the district court set a date for a sentencing hearing, the prosecutor stated that "a condition of the deal" was Jeffries's "appearance at sentencing and his cooperation with the PSI." Otherwise, the prosecutor said, "the plea will stand, but the deal is off." Jeffries responded that the plea itself would be nullified if the state withdrew from the deal. Jeffries expressed concern that the probation officer might overstate his lack of cooperation, but the district court said, "I'm not anticipating the cooperation being the key. I'm anticipating if you don't show up, that's going to be the key."

Shortly after the plea hearing, Jeffries was accused of violating his conditions of release because he left town for a family emergency. The court excused the violation and allowed Jeffries to remain on release until sentencing.

Before the sentencing hearing, the district court informed Jeffries and the state, in chambers, that it was rejecting the plea agreement. Addressing Jeffries, the court said, "I accepted the pleas earlier," but "your history looked a lot worse than what I thought it was." The court explained that it was "not prepared to sentence [Jeffries] to a probationary sentence as it was outlined in the plea agreement." The court told Jeffries, "I'm giving you your pleas back. So you're not guilty."

Jeffries later renegotiated a guilty plea, which was accepted by the court. His attorney had moved to dismiss the complaint on unrelated grounds but did not raise a double-jeopardy claim. Jeffries was convicted based on his plea of guilty to the charged offense of felony domestic assault and sentenced to sixty months' imprisonment. He appeals from that conviction.

## ISSUES

I. Did the district court's rejection of Jeffries's guilty plea, followed by a later acceptance of a renegotiated plea, violate Jeffries's protections against double jeopardy?

II. Was Jeffries denied the effective assistance of counsel?

## ANALYSIS

### I

■ The principal argument in this appeal is that the district court's actions placed Jeffries twice in jeopardy for the same offense. Whether the protections against double jeopardy were violated is a constitutional question that is reviewed de novo. *State v. Leroy,* 604 N.W.2d 75, 77 (Minn.1999).

■ The double-jeopardy clauses of the federal and state constitutions protect criminal defendants from a second prosecution for the same offense following con-

viction. *Hankerson v. State*, 723 N.W.2d 232, 236–37 (Minn.2006). The question of when jeopardy attaches in a guilty-plea proceeding has not been squarely addressed under either constitution. *See Ricketts v. Adamson*, 483 U.S. 1, 8, 107 S.Ct. 2680, 2685, 97 L.Ed.2d 1 (1987) (holding that jeopardy attaches "at least" when defendant who pleads guilty has been sentenced); *In re Welfare of J.L.P.*, 709 N.W.2d 289, 292 (Minn.App.2006) (noting that "[w]hen a defendant pleads guilty, jeopardy attaches, at the latest, when sentencing occurs").

In accepting Jeffries's plea "based upon the facts on the record," the district court specifically accepted the guilty plea, found Jeffries guilty of the felony domestic-assault offense, and stated, "you are convicted of that." Nevertheless, the district court rejected the plea agreement when Jeffries appeared for sentencing, and allowed Jeffries to withdraw his guilty plea. This series of events underscores the difficulty of determining what constitutes a conviction for purposes of a double-jeopardy inquiry.

The supreme court has held that, for purposes of its use to enhance a later offense, a "conviction" occurs when "a district court both accept[s] and record[s] the guilty plea." *State v. Thompson*, 754 N.W.2d 352, 355 (Minn.2008). Requiring both acceptance and recording of a guilty plea to constitute a conviction in *Thompson* is more easily understood in the context of determining the date of a prior conviction for purposes of the repeat-sex-offender statute. *Id.* (framing issue as question of whether defendant had requisite prior conviction for ten-year, conditional-release period under Minn.Stat. § 609.109, subd. 5 (1988)). This application of the broader statutory definition of "conviction" that is found in Minn.Stat. § 609.02, subd. 5 (2006), relates more directly to the sentencing purposes that were at issue in *Thompson*. Even though the supreme court in *Thompson* was addressing when a "conviction" occurs in the process of presenting and evaluating a guilty plea and sentencing the defendant on that plea, it was not faced with the double-jeopardy implications of identifying the point in that process when a "conviction" occurs.

Whether a broad or narrow definition applies for purposes of double jeopardy in a guilty-plea proceeding, the acceptance of the plea is a significant component of a conviction. The rules provide that, when a guilty plea is entered, the district court must either "reject or accept" the plea "on the terms of the plea agreement." Minn. R.Crim. P. 15.04, subd. 3(1). But the district court may postpone the decision until after it has received the presentence investigation (PSI), which is a common practice. *Id.*; *see State v. Genereux*, 272 N.W.2d 33, 34 (Minn.1978) (stating that district court should have deferred accepting guilty plea until after PSI). Acceptance of a plea must occur on the record. *See State v. Johnson*, 617 N.W.2d 440, 442–43 (Minn.App.2000) (declining to enforce agreement allegedly reached in chambers but never placed on record). But, even under the broader definition in *Thompson*, a "conviction" does not occur if the plea itself is accepted, but the court's decision on the negotiated sentence is postponed pending the PSI. *See Thompson*, 754 N.W.2d. at 356 (noting that district court postponed acceptance of plea by stating it would wait for PSI).

A district court could well be in a position to accept or reject the guilty plea definitively if it has had the benefit of a pre-plea investigation. But, even though an investigation equivalent to a PSI may be completed before the guilty plea is offered, there is no provision, let alone a

requirement, for a pre-plea investigation in the rules. *See State v. Sejnoha,* 512 N.W.2d 597, 598 (Minn.App.1994) (noting district court's ordering of pre-plea investigation), *review denied* (Minn. Apr. 21, 1994); *cf.* Minn.Stat. § 609.115, subd. 1(a) (2008) (providing for presentence investigation to be ordered "when the defendant has been convicted of a felony").

At Jeffries's plea hearing, the district court did not state that it was reserving a decision on Jeffries's plea agreement until it could review the PSI. And it stated in definite terms both its acceptance of the guilty plea and the fact that Jeffries stood convicted of the offense. Even so, the continuance for sentencing, the pending PSI, and the general discussion between the prosecutor and defense counsel suggests a range of contingencies that a final conviction would likely have foreclosed.

The ambiguity of the procedural posture of Jeffries's plea demonstrates the problems that are created when the district court procedures are not clearly stated. The district court could have stated that it was reserving acceptance or rejection of the plea until the sentencing hearing when it would have the benefit of the PSI. This straightforward approach avoids any unintended double-jeopardy implications and follows what has historically been the preferred practice of postponing acceptance or rejection of the plea agreement until the PSI has been completed and reviewed. *See* Minn. R.Crim. P. 15.04, subd. 3(1) (allowing postponement of acceptance or rejection of plea until receipt of PSI).

The procedure that the district court was following was at odds with its statement about Jeffries's "conviction." Consequently, we are reluctant to conclude that the district court's language, which may have been intended to impress on Jeffries the seriousness of his situation and discourage any frivolous plea-withdrawal mo-

tion, was of sufficient constitutional significance that the court could not reject the plea agreement without barring any criminal sanction or further prosecution for the offense. *See, e.g., United States v. Sanchez,* 609 F.2d 761, 762–63 (5th Cir.1980) (rejecting application of double jeopardy when district court "temporarily" accepted but then rejected plea to lesser charge).

■ We conclude for other reasons, however, that it is unnecessary to finally decide this issue. Importantly, our analysis of the effect of the district court's statements at the plea hearing is not independent from the overall plea and sentencing proceeding and it is also affected by the point at which our review takes place. Jeffries's position is that the effect of the district court's statements, together with the course of the proceedings, requires that his conviction be "vacated, with no further prosecution pursued." Notably, Jeffries does not seek restoration of the conviction that he argues was entered as a result of his first guilty plea, nor does he seek reinstatement of the stayed sentence that was negotiated to accompany that plea. Neither does Jeffries fully address the effect of his subsequent guilty plea to the charged offense and whether that plea effectively waives his claim of double jeopardy.

■ The general rule is that a counseled guilty plea operates as a waiver of all "nonjurisdictional" defects. *State v. Ford,* 397 N.W.2d 875, 878 (Minn.1986). Double jeopardy is considered a defense to be pleaded, not a "jurisdictional" impediment. *See* Minn. R.Crim. P. 14.01(d) (permitting plea of "double jeopardy").

The United States Supreme Court has indicated that, at least in many circumstances, a double-jeopardy claim is not waived by a plea of guilty:

We do not hold that a double jeopardy claim may never be waived. We simply hold that a plea of guilty to a charge does not waive *a claim that—judged on its face—the charge is one which the [s]tate may not constitutionally prosecute.*

*Menna v. New York*, 423 U.S. 61, 62 n. 2, 96 S.Ct. 241, 242 n. 2, 46 L.Ed.2d 195 (1975) (emphasis added). There appears to be some difference of opinion, however, over the meaning of "judged on its face." We must also consider whether the *Menna* general rule of nonwaiver is binding on Minnesota courts.

The Supreme Court later interpreted *Menna* as meaning that the double-jeopardy claim is not waived if it could be "resolved without any need to venture beyond [the] record" existing at the time of the plea. *United States v. Broce*, 488 U.S. 563, 575, 109 S.Ct. 757, 765, 102 L.Ed.2d 927 (1989). In *State v. Jenson*, 312 N.W.2d 673, 675 (Minn.1981), however, our supreme court, relying on the more general language in *Menna*, read that case as holding that a guilty plea "by itself" does not waive a claim that "judged on its face, the charge is one barred by the double-jeopardy clause *no matter how validly factual guilt is established.*" (Emphasis added.)

*Broce* appears to read *Menna* as holding that "the claim" of double jeopardy must be "judged on its face." *Broce*, 488 U.S. at 575, 109 S.Ct. at 765 (noting record in *Menna* was adequate at time the guilty plea was entered to resolve double-jeopardy claim). If a further record is needed to resolve it, then the double-jeopardy claim cannot be "judged on its face," and a valid guilty plea would waive the double-jeopardy claim. But *Jenson* appears to read *Menna* as referring to "the charge" as what must be "judged on its face," with no inquiry into the strength of the showing of "factual guilt." 312 N.W.2d at 675 (stating

that *Menna* holds that guilty plea "does not waive a claim that, judged on its face, *the charge* is one barred" by double jeopardy (emphasis added)). A "charge" can always be judged based on the face of the complaint. It is the double-jeopardy issue—often, whether the current charge is for the "same offense" of which the defendant was formerly charged or convicted— that may need further inquiry.

*Jenson* applies the language of *Menna* and *Broce* as if those opinions were controlling precedent. But there is some question whether those United States Supreme Court decisions, which address the procedural issue of waiver, and not the constitutional double-jeopardy issue itself, are binding on state courts. As the Supreme Court has noted in its recent *Danforth* opinion holding that the *Teague* retroactivity standard is not binding on the states, the availability or nonavailability of remedies is a mixed question of state and federal law on which U.S. Supreme Court precedent does not bind the states. *Danforth v. Minnesota*, 552 U.S. 264, 128 S.Ct. 1029, 1042, 169 L.Ed.2d 859 (2008).

The Wisconsin Supreme Court has recognized that the scope of waiver by guilty plea is a matter of state law, not federal constitutional law. *State v. Kelty*, 294 Wis.2d 62, 716 N.W.2d 886, 894 (2006). The *Kelty* court reversed a long line of Wisconsin cases that had relied on *Menna*. *See id.* at 892 (citing cases relying on *Menna* beginning in 1982). The court cited *Lefkowitz v. Newsome*, 420 U.S. 283, 288, 95 S.Ct. 886, 889, 43 L.Ed.2d 196 (1975) for the proposition that "the effect of a guilty plea is a function of state law." *Kelty*, 716 N.W.2d at 894. In *Lefkowitz*, the U.S. Supreme Court deferred to a state policy of allowing appellate review of double-jeopardy claims following a guilty plea, permitting federal habeas review of

the claim to go forward. 420 U.S. at 293–94, 95 S.Ct. at 891–92.

We conclude that the Wisconsin Supreme Court's analysis in *Kelty* is persuasive, particularly as the court reversed a twenty-four-year-old line of Wisconsin decisions relying on United States Supreme Court case law. In Minnesota, recognizing that the scope of the guilty-plea-waiver rule is a matter of state law would not have that drastic an effect. Minnesota has no history of "sweeping statement[s] that a guilty plea cannot waive a double-jeopardy claim." *Kelty*, 716 N.W.2d at 894. Our supreme court merely implied in *Jenson* that *Menna* was controlling, while finding that the plea waived the double-jeopardy claim in that case, and that there was an explicit waiver of it in any event. *Jenson*, 312 N.W.2d at 675. As *Kelty* notes, *Menna* did not hold that the Double Jeopardy Clause, itself, mandated a rule of nonwaiver. *Kelty*, 716 N.W.2d at 894. And there appears to be no good reason generally to defer to United States Supreme Court decisions on the effect of state court guilty pleas even though the waiver of a federal constitutional guarantee is at stake.

Thus, we conclude that *Menna* is not binding precedent in Minnesota courts. But that leaves the question of what Minnesota law is on the subject. There is caselaw holding that a guilty plea waives the statutory protection against serialized prosecution. *State v. Zimmerman*, 352 N.W.2d 452, 455 (Minn.App.1984). Although *Jenson* appears to be the only opinion on the effect of a guilty plea on a constitutional double-jeopardy claim, Minnesota has not recognized any exception for constitutional claims to the general rule that a valid guilty plea waives all nonjurisdictional defects.

In Minnesota, double jeopardy is an affirmative defense. Minn. R.Crim. P. 14.01(d) (permitting plea of double jeopar-

dy). A valid claim of double jeopardy has not been held in Minnesota to present a jurisdictional defect. Thus, we conclude that under Minnesota law, it is waived by Jeffries's subsequent counseled plea of guilty. Furthermore, we note that, even assuming the *Menna* standard for waiver of a double-jeopardy claim applied, Jeffries's claim would be waived. Jeffries's double-jeopardy claim, relying as it does on the legal effect of the district court's statements at the time of Jeffries's earlier guilty plea, is not one that could have been determined on the face of the existing record at the time of the second plea. Thus, we conclude that under Minnesota law Jeffries's second guilty plea waives his double-jeopardy claim.

**II**

■■■■ Finally, Jeffries argues, in the alternative, that defense counsel was ineffective for failing to raise the double-jeopardy claim before Jeffries entered his second guilty plea. A claim of ineffective assistance may be raised on direct appeal if it can be decided based on the existing record. *Vance v. State*, 752 N.W.2d 509, 513 (Minn.2008).

■■■■ The record establishes that defense counsel did not mention the availability of a double-jeopardy claim nor obtain Jeffries's waiver of a double-jeopardy claim before he pleaded guilty. But counsel is not ineffective for failing to raise a claim that is lacking in merit. The defendant must show that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and that there is a reasonable probability that the result would have been different but for counsel's errors. *Pierson v. State*, 637 N.W.2d 571, 579 (Minn.2002). When there has been a guilty plea, the defendant must show that he would not have pleaded guilty but for counsel's erroneous advice. *State v. Ecker*, 524 N.W.2d 712, 718 (Minn. 1994).

Defense counsel could have cited no Minnesota caselaw holding that the district court's acceptance of Jeffries's first guilty plea constituted a "conviction" for double-jeopardy purposes. Therefore, a double-jeopardy claim would have been a tenuous one. And Jeffries pleaded guilty despite the fact that a key prosecution witness had failed to appear for trial the day before, and there was a substantial question whether she would appear for the rescheduled trial date. Furthermore, Jeffries pleaded guilty even though the agreement called for a sixty-month executed sentence, which was substantially more severe than the original agreed-upon forty-eight-month stayed sentence. Thus, any claim that Jeffries, although willing to plead guilty despite the weakness in the state's case and the more severe sentence, would not have pleaded guilty had he been advised of the tenuous double-jeopardy claim raised on appeal, is highly doubtful.

We conclude that Jeffries has not shown that he was deprived of the effective assistance of counsel in pleading guilty without his attorney having raised the tenuous claim of double jeopardy arising from his earlier plea that was ultimately rejected by the district court.

## DECISION

Jeffries's counseled guilty plea waived his claim that the acceptance of his earlier guilty plea, despite its later rejection, constituted a conviction barring further prosecution under the Double Jeopardy Clause. And Jeffries has not shown that the failure to raise the double-jeopardy claim before the later guilty plea deprived him of the effective assistance of counsel.

**Affirmed.**