STATE of Minnesota, Respondent,

v.

**Christopher Wayne SWINGER,**
**Appellant.**

No. A10–1559.

Court of Appeals of Minnesota.

Aug. 1, 2011.

Lori Swanson, Attorney General, Matthew G. Frank, Kelly O'Neill Moller, Assistant Attorneys General, St. Paul, MN; and Robert J. Raupp, Benton County Attorney, Foley, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Theodora K. Gaitas, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; PETERSON, Judge; and SCHELLHAS, Judge.

## OPINION

PETERSON, Judge.

In this appeal from convictions of misdemeanor disorderly conduct and third-degree and fifth-degree assault, appellant argues that the district court erred by (1) admitting evidence of appellant's prior convictions for impeachment purposes, (2) admitting testimony about appellant's swastika tattoo, and (3) providing jurors with a pamphlet entitled *Behind Closed Doors: A Guide to Jury Deliberations.* In a pro se supplemental brief, appellant argues that the cumulative effect of multiple trial errors denied appellant a fair trial. We affirm.

## FACTS

Appellant Christopher Wayne Swinger was with two friends in his father's room at a motel when R.K., who lived with her fiancé, R.S., in a neighboring room, stopped by to visit. Appellant's father was not in the room, and appellant asked R.K. to leave. R.K. initially refused to leave the room, but she complied after appellant spat in her face and pushed her toward the hallway. R.K. told appellant that she was going to find his father and tell him what happened.

R.K. found appellant's father on the balcony. When R.K. told appellant's father what happened, he apologized for appellant's conduct. Appellant, who had followed R.K. out of the room, began trying to talk to his father over R.K. As a result, R.K. raised her voice while talking to appellant's father.

R.S. was in the room he shared with R.K. watching television with the door and window open when he heard a lot of commotion. R.S. thought he heard R.K. say something about someone pushing, so he decided to go out and investigate. When R.S. walked out of the room, he saw a group of five or six people standing around outside a room two doors down and arguing. R.S. approached the group to learn what was going on and learned from R.K. that appellant had spit in her face and pushed her. R.S. told appellant that he was a "disrespectful damn punk." R.K. told R.S. to go back to their room and that she would take care of it. As R.S. was turning around, appellant said, "You call me a punk?" Appellant then reached over the group of people and, with a closed fist, struck R.S. on the head. During this altercation, R.S.'s glasses fell off, and he received several cuts and scratches on his face, causing him to bleed.

R.S. went back to his room to contact the police and to clean off his face. After the police were called, appellant went down to the motel's parking lot and stood in the parking lot shouting insults and names at R.S. Because R.S. was concerned that appellant would flee before the police arrived, he motioned for appellant to come back to the balcony. Appellant went back upstairs, and a second fight occurred. Appellant took off when he heard sirens approaching.

Appellant was charged with one count of third-degree assault in violation of Minn. Stat. § 609.223, subd. 1 (2008); one count

of fifth-degree assault in violation of Minn. Stat. § 609.224, subds. 1(1), 4(b) (2008) (intent to cause fear of immediate bodily harm); and one count of fifth-degree assault in violation of Minn.Stat. § 609.224, subds. 1(2), 4(b) (2008) (intentionally inflicting bodily harm).

Before trial, the state filed notice of its intention to offer evidence of 22 of appellant's prior convictions for impeachment purposes at trial, and appellant moved to preclude any reference to his swastika tattoo during trial. At a pretrial hearing, the district court granted the state's request to impeach appellant with the 22 convictions if appellant testified at trial and denied appellant's motion to preclude evidence of his tattoo.

At trial, the state presented the testimony of R.S., R.K., and two of the responding officers. Appellant testified and argued that he acted in self-defense. After the submission of evidence, the district court instructed the jury on the law and on the lesser-included offense of misdemeanor disorderly conduct in violation of Minn. Stat. § 609.72, subd. 1 (2008). After closing arguments, the district court delivered some final jury instructions, which included the following instruction:

> When you get to the jury room, you'll find a pamphlet entitled *Behind Closed Doors—A Guide to Jury Deliberations.* Please take a moment to read through it before you begin your deliberations. You'll find that it will assist you, particularly with respect to the kind of housekeeping issues that arise during the deliberation process.

The jury found appellant guilty of third-degree assault, fifth-degree assault with intent to inflict bodily harm, and misdemeanor disorderly conduct. Appellant was acquitted of fifth-degree assault with intent to cause fear of imminent bodily harm. The district court sentenced appellant to an executed term of 39 months in prison. This appeal followed.

## ISSUES

I. Did the district court abuse its discretion by permitting the state to impeach appellant with evidence of his prior convictions?

II. Did the district court abuse its discretion by permitting the state to present evidence about appellant's swastika tattoo?

III. Did the district court commit a structural error when it provided the jury with the pamphlet, *Behind Closed Doors: A Guide for Jury Deliberations?*

IV. Did the cumulative effect of the alleged errors deprive appellant of his right to a fair trial?

## ANALYSIS

### I.

The district court ruled that, if appellant testified, he could be impeached with evidence of (1) 12 misdemeanor convictions of theft by swindle, theft by fraud, theft by false representation, and providing a false name to police; (2) one gross-misdemeanor conviction of theft by fraud; and (3) one felony conviction of theft by swindle. Because these 14 offenses involved dishonesty or false statement, appellant does not contest the admissibility of evidence about the convictions under Minn. R. Evid. 609(a)(2). But appellant argues that the district court abused its discretion by also ruling that he could be impeached with evidence of (1) one conviction of felony controlled-substance crime, (2) five convictions of felony theft, and (3) two convictions of felony theft from person.

When ten or fewer years have elapsed since a felony conviction, evidence

of the conviction may be admitted for impeachment purposes provided that the probative value of the evidence outweighs its prejudicial effect. Minn. R. Evid. 609(a)(1), (b). Whether the probative value of a prior conviction outweighs its prejudicial effect is a matter within the discretion of the district court. *State v. Graham,* 371 N.W.2d 204, 208 (Minn. 1985). The district court's ruling on the impeachment of a witness by prior conviction is reviewed under a clear-abuse-of-discretion standard. *State v. Ihnot,* 575 N.W.2d 581, 584 (Minn.1998). "On appeal, the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *State v. Amos,* 658 N.W.2d 201, 203 (Minn.2003).

■ In determining whether the probative value of the evidence outweighs its prejudicial effect, a district court must consider:

"(1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue."

*Ihnot,* 575 N.W.2d at 586 (quoting *State v. Jones,* 271 N.W.2d 534, 538 (Minn.1978)). The district court must demonstrate on the record that it considered and weighed the five *Jones* factors. *State v. Davis,* 735 N.W.2d 674, 680 (Minn.2007). "These factors are also considered on appeal in determining whether the [district] court erred in the exercise of its discretion." *Laughnan v. State,* 404 N.W.2d 326, 330 (Minn.App.1987) (citing *State v. Bowser,* 307 N.W.2d 778, 779 (Minn.1981)), *review denied* (Minn. June 9, 1987).

With respect to appellant's prior convictions, the district court stated:

Well, it does seem to the Court that credibility is a central issue here, that the credibility of the defendant is the central issue, particularly if he's going to be the only one testifying; and those items that are not automatically [admissible] under 609 all fall within the—the ten years. None of them are similar to the charged crime, that is, they aren't assault charges, and I do think it's important that the jury be able to evaluate the testimony and the credibility of the testimony knowing about the history here. I mean, it doesn't make much sense to me that if you have two or three they would be admissible, but when you get 20 they shouldn't be because it's just so overwhelming. Certainly it's prejudicial. I guess all prior convictions are prejudicial, but the probative value in terms of evaluating the testimony of the defendant I think far outweigh that. The jury ought to know about the defendant's history, so I'm going to admit them.

Appellant acknowledges that the district court considered the *Jones* factors, but argues that the district court "failed to meaningfully consider the admissibility of those convictions that required the exercise of discretion." Appellant contends that the district court abused its discretion because the court "failed to consider the prejudicial effect of the convictions beyond noting that they were not assaults.... Thus, the [district] court did not account for the fact that certain offenses, such as the controlled substance offense, were more likely to cause unfair prejudice than others." Appellant claims that, "given this deficient analysis, the [district] court's ultimate decision to admit all [22] of [appellant's] prior convictions as impeachment evidence was error."

■ We conclude that the district court improperly admitted evidence of the prior conviction of felony controlled-substance crime, five convictions of felony theft, and two convictions of felony theft from person without considering the probative value of each conviction individually. *See Jones,* 271 N.W.2d at 537–38 (listing factors for district court to consider in determining admissibility of each prior conviction). Because we conclude that the district court abused its discretion in admitting evidence of these eight prior convictions without considering the probative value of each conviction individually, we must determine whether the error was harmless. *State v. Vanhouse,* 634 N.W.2d 715, 721 (Minn. App.2001), *review denied* (Minn. Dec. 11, 2001).

■ "The erroneous admission of evidence is 'harmless if there is no reasonable possibility that the wrongfully admitted evidence significantly affected the verdict.' " *State v. Utter,* 773 N.W.2d 127, 133 (Minn. App.2009) (quoting *State v. Robinson,* 718 N.W.2d 400, 407 (Minn.2006)) (other quotation omitted). In light of the proper admission of appellant's 14 convictions involving dishonesty or false statement, and the strong evidence supporting appellant's conviction, we find no reasonable possibility that admission of these eight additional felony convictions significantly affected the verdict. The district court's erroneous admission of that evidence was harmless.

Appellant also argues that the district court erred by failing to "determine on a conviction-by-conviction basis which offenses involved dishonesty or false statement, making them automatically admissible under Rule 609(a)(2), and which offenses did not, requiring the [district] court to balance probative value and potential for unfair prejudice in determining admissibility." But both this court and the supreme court have upheld the admission of prior convictions under rule 609 even though the district court did not specify which part of the rule allowed for admission. *See State v. Gassler,* 505 N.W.2d 62, 66 (Minn.1993) (upholding admission of prior convictions under rule 609(a)(1) even though district court did not specify which part of rule 609(a) applied); *accord State v. Hofmann,* 549 N.W.2d 372, 375 (Minn.App.1996), *review denied* (Minn. Aug. 6, 1996).

## II.

■ Appellant next argues that the district court abused its discretion by allowing testimony about his swastika tattoo. This court reviews a district court's evidentiary rulings for an abuse of discretion. *State v. Prtine,* 784 N.W.2d 303, 312 (Minn.2010). "The defendant has the burden of proving both that the district court abused its discretion and that prejudice resulted." *Id.* (citing *State v. Nunn,* 561 N.W.2d 902, 907 (Minn.1997)). Reversal is warranted only if the error substantially influenced the jury's decision. *Nunn,* 561 N.W.2d at 907.

The district court ruled that if the swastika tattoo "was part of the argument, that is, it somehow came up as part of the argument or if it affected the state of mind of part of the participants, that is, they were relying on it as motive or intent here, then it would be admissible. Otherwise, it's not relevant." At trial, R.K., who is African American, was asked to describe what happened in appellant's father's motel room, and she stated:

[R.K.]: [Appellant] had asked me to give him a hug, and I replied no, because he didn't like me anyway, you know, for the fact that being he had a—a swastika emblem on his arm, you know, that I had seen way before then. So we had already had that conversation about

that, so I told him, Why should I hug you? You don't even like me. You know, why would we even go there?

. . . .

[STATE]: . . . [W]hat happened after you said no, that you didn't want to hug him?

[R.K.]: Well, he insisted that I give him a hug, why—that I thought I was too good to hug him or whatever, and I told him, No, we just need to leave that alone, because I–I knew he didn't like me.

■ Appellant argues that R.K.'s "testimony that [appellant] had a swastika emblem on his arm had little, if any, bearing on the issues at trial." As a general rule, all relevant evidence is admissible, but evidence which is not relevant is not admissible. Minn. R. Evid. 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. "Evidence is relevant and has probative value when it, in some degree, advances the inquiry. A fact is relevant if, when taken alone or in connection of other facts, [it] warrants a jury in drawing a logical inference assisting, even though remotely, the determination of the issue in question." *State v. Schulz*, 691 N.W.2d 474, 478 (Minn. 2005) (citation omitted).

Appellant contends that the fact that R.K. "observed a swastika tattoo on [appellant's] arm, and assumed that [appellant] did not like her because of her race, did not make it any more likely that [appellant] assaulted [R.S.], a white man." But "[e]vidence that helps to establish the relationship between the victim and the defendant or which places the event in context bolsters its probative value." *State v. Kennedy*, 585 N.W.2d 385, 392

(Minn.1998). And the supreme court has recognized that all evidence surrounding an assault, both before and after, is relevant to determine intent. *See State v. Bliss*, 457 N.W.2d 385, 390 (Minn.1990) (first-degree murder).

The testimony about appellant's swastika tattoo was relevant because it helped explain the initial confrontation between appellant and R.K. and provided context for the whole event. On this record, we conclude that R.K.'s testimony regarding appellant's swastika tattoo was relevant.

■ Appellant argues further that, "[e]ven if the swastika emblem did have some relevance, it had a tendency to persuade primarily by virtue of its inflammatory nature." Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Minn. R. Evid. 403. "When balancing the probative value against the potential prejudice, unfair prejudice is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Bell*, 719 N.W.2d 635, 641 (Minn.2006) (quotation omitted).

■ Appellant argues:

Given the nature of the symbol here, there was a serious potential that the jurors would be inflamed, and that their animus would be directed against [appellant]. Because the potential for unfair prejudice was so high, and the probative value of the evidence so low, the [district] court simply should have excluded it.

But the testimony about the swastika tattoo was not used here to persuade by illegitimate means. Rather, the evidence was used to explain the start of the confrontation and to provide the proper context for the incident for which appellant

was charged. The district court did not abuse its discretion in admitting testimony about appellant's swastika tattoo.

### III.

Appellant asserts that the district court committed structural error by permitting the pamphlet *Behind Closed Doors: A Guide to Jury Deliberations* in the jury-deliberation room because it contained misleading information and is not the type of information allowed in the jury-deliberation room.

■■■ "[S]tructural errors are 'defects in the constitution of the trial mechanism, which defy analysis by "harmless-error" standards.'" *State v. Dorsey,* 701 N.W.2d 238, 252 (Minn.2005) (quoting *Arizona v. Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991)). "Structural errors require automatic reversal because such errors 'call into question the very accuracy and reliability of the trial process.'" *State v. Brown,* 732 N.W.2d 625, 630 (Minn.2007) (quoting *State v. Osborne,* 715 N.W.2d 436, 448 n. 8 (Minn.2006)) (other quotation omitted). The United States Supreme Court has adopted two factors to determine whether an error is structural: (1) "the difficulty of assessing the effect of the error"; and (2) "the irrelevance of harmlessness." *United States v. Gonzalez–Lopez,* 548 U.S. 140, 149 n. 4, 126 S.Ct. 2557, 2564 n. 4, 165 L.Ed.2d 409 (2006). Some examples of structural error "include the denial of counsel, the denial of the right of self-representation, the denial of the right to public trial, and the denial of the right to trial by jury by the giving of a defective reasonable-doubt instruction." *Id.* at 149, 126 S.Ct. at 2564 (citations omitted).

■■■ Appellant argues that providing the pamphlet was a structural error, requiring no analysis as to prejudice, because there is no way of quantifying the effect of the pamphlet on the jury. We disagree. Appellate courts routinely analyze whether an erroneous jury instruction was prejudicial or if the error was harmless and had no significant impact on the verdict. *See, e.g., State v. Yang,* 774 N.W.2d 539, 557 (Minn.2009) (rejecting argument that erroneous jury instruction constitutes structural error and noting that harmless-error analysis applies to erroneous jury instructions); *State v. Kuhnau,* 622 N.W.2d 552, 558–59 (Minn.2001) (analyzing whether an erroneous jury instruction was harmless). The transcript shows that the district court correctly instructed the jury as to the state's burden of proof and the presumption of innocence, and the pamphlet reminded jurors that the pamphlet "is not intended to take the place of any instructions given to you by the judge." Because determining whether any prejudice resulted is possible, indicating any error was not structural, we conclude that the district court did not commit structural error by providing the jury with the pamphlet.

Appellant does not argue in the alternative that, if the error was not a structural error, the district court committed an error that is not harmless or an error that would satisfy the plain-error test. Because we conclude that providing the pamphlet was not a structural error and appellant does not argue that the district court committed an error subject to a plain-error or harmless-error analysis, we need not conduct any further analysis of the issue. However, by affirming appellant's conviction, we do not endorse the use of the pamphlet used in this case or any similar pamphlet. We only conclude that the district court's use of the pamphlet was not a structural error.

### IV.

■■■ In a pro se supplemental brief, appellant argues that the cumulative effect

of the errors at his trial requires reversal of his conviction. Under some circumstances, the cumulative effect of multiple harmless errors may deny a fair trial and, therefore, require reversal for a new trial. *State v. Litzau*, 650 N.W.2d 177, 187 (Minn.2002). When determining whether reversal is appropriate, reviewing courts balance the egregiousness of the errors against the weight of proof against the defendant. *State v. Cermak*, 350 N.W.2d 328, 334 (Minn.1984). A new trial is not warranted when "errors did not affect the jurors' deliberations or their assumptions about appellant's innocence or guilt." *State v. Erickson*, 610 N.W.2d 335, 341 (Minn.2000). The cumulative effect of any errors that occurred during appellant's trial is insufficient to require reversal. *See State v. Peterson*, 530 N.W.2d 843, 848 (Minn.App.1995) (concluding that the cumulative effect of the following errors required reversal: district court instructed jury to continue deliberating until they reached a unanimous verdict; appellant's confrontation rights were violated; and prosecutorial misconduct in closing argument, which turned *Spreigl* evidence into improper substantive evidence).

## DECISION

The district court abused its discretion by permitting the state to impeach appellant with evidence of his eight additional felony convictions without considering the probative value of each conviction individually, but the error was harmless. The district court did not abuse its discretion by allowing testimony about appellant's swastika tattoo. The district court's decision to provide jurors with the pamphlet did not constitute a structural error. The cumulative effect of any errors that occurred during appellant's trial did not deprive appellant of a fair trial and is insufficient to require reversal.

**Affirmed.**