**Jermaine FERGUSON, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. A12–0310.

Supreme Court of Minnesota.

Feb. 27, 2013.

David W. Merchant, Chief Appellate Public Defender, Renée Bergeron, Special Assistant Public Defender, Saint Paul, MN, for appellant.

Lori Swanson, Attorney General, Saint Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, MN, for respondent.

## OPINION

STRAS, Justice.

Following a jury trial, the district court convicted appellant Jermaine Ferguson of first-degree premeditated murder and attempted first-degree premeditated murder for his role in a shooting that caused the death of one person and injured two others. In a consolidated appeal, we affirmed Ferguson's convictions and the postconviction court's summary denial of Ferguson's first petition for postconviction relief. *State v. Ferguson* (*Ferguson I*), 742 N.W.2d 651 (Minn.2007). Ferguson subsequently filed a second postconviction petition, which the postconviction court denied without an evidentiary hearing. We reversed and remanded for an evidentiary hearing. *Ferguson v. State* (*Ferguson II*), 779 N.W.2d 555 (Minn.2010). After a hearing, the postconviction court again denied Ferguson's petition. On appeal, Ferguson challenges the court's conclusion that an affidavit from a recanting witness is inadmissible hearsay. Ferguson also claims that he was denied the effective assistance of counsel during the postconviction proceedings. Because we conclude that the postconviction court did not abuse its discretion in excluding the affidavit and that Ferguson does not have a constitutional right to effective assistance of postconviction counsel, we affirm.

## I.

Our opinion in Ferguson's direct appeal more fully discusses the facts underlying Ferguson's convictions. *See Ferguson I*, 742 N.W.2d at 653–56; *see also Ferguson II*, 779 N.W.2d at 557–58. We nonetheless recount the facts relevant to addressing Ferguson's appeal from the denial of his second petition for postconviction relief.

On December 7, 2004, three men—Kentrell Green, Johntaye Hudson, and Ferguson—kicked open the door to an apartment in Minneapolis and opened fire on its occupants, killing Joseph Papasadora and injuring Ernest Houle and Gordon Hill. The apparent reason for the attack was to retaliate against Collin Goodwin, the intended target of the shooting, who had assaulted a friend of the three men earlier that day. As it turned out, Goodwin was not present at the apartment when the three men attacked the apartment's occupants.

At trial, Green testified that he accompanied Ferguson and Hudson to confront Goodwin about the assault. Green's fiancée, Judonna Parker, drove the three men to the apartment. Green testified that each of the men had a gun. Green further testified that, once Ferguson kicked open the apartment door, all three men fired at the apartment's occupants. Outside, Parker heard 8 to 10 "real quick noises" that "sounded like gunshots." Parker then observed Ferguson, Green, and Hudson running down the street, at which point she drove around the block to pick them up.

Following trial, the jury found Ferguson guilty of first-degree premeditated murder and attempted first-degree premeditated murder. We stayed Ferguson's direct appeal to permit him to file a postconviction petition, in which he alleged that Green had recanted his trial testimony. As evidence of Green's alleged recantation, Ferguson offered a memorandum written by defense investigator Michael Grostyan, which stated:

> It should be noted that on May 2, 2006, at 1:00 p.m., [Ferguson's trial counsel] and Michael Grostyan interviewed Kentrell Green, at Stillwater State Prison.

> Mr. Green informed us that our client, Jermaine Ferguson, was not present at the scene of the murder that he is serving time for. He indicated that he told the authorities and I believed [sic] he testified also that Jermaine Ferguson was present. His explanation for doing that was that the police threatened to take the children away from the children's mother, Judonna Parker, and they also threatened to send Ms. Parker to prison for her potential involvement.

The postconviction court summarily denied Ferguson's petition and we consolidated Ferguson's direct and postconviction appeals.

In his consolidated appeal, Ferguson argued, among other things, that the postconviction court abused its discretion when it denied his petition for postconviction relief without an evidentiary hearing. We agreed with the postconviction court that "the Grostyan memorandum carrie[d] insufficient indicia of the trustworthiness of recantation to merit a hearing" and affirmed the summary denial of Ferguson's postconviction petition without prejudice. *Ferguson I*, 742 N.W.2d at 660. We also stated that "Ferguson may file a new petition to address [the witness recantation] issue based on a more satisfactory showing of a genuine recantation of trial testimony." *Id.*

Ferguson subsequently filed a second postconviction petition, in which he attempted to make a greater showing of genuine recantation by offering into evi-

dence an affidavit from Green that states, in relevant part:

> [W]hile in costody [sic] on the case that I'm currently incarcerated for, I was not fully truthful on the facts pertaining to this case.... I was told that I would lose my son and do life in prison if I didn't give the police JERMAINE FERGUSON. I told them that he was not with me but they continued to say that they wanted Ferguson and that they did not care about anybody else. So from the stress and my lack of knowledge in the law, I lied and said that Jermaine Ferguson was with me at the sceen [sic] of the crime, which he never was and I told the police that the first time.

The postconviction court found that Ferguson had "not offered any more evidence of genuine recantation" than in his first petition and summarily denied his second petition. On appeal, we addressed whether Ferguson's second petition alleged facts that, if proven, would entitle him to a new trial under the three-prong *Larrison* test. *Ferguson II*, 779 N.W.2d at 559–62; *see, e.g., Pippitt v. State*, 737 N.W.2d 221, 226–27 & n. 5 (Minn.2007) (citing *Larrison v. United States*, 24 F.2d 82, 87–88 (7th Cir. 1928)). In doing so, we observed that "Green's affidavit gives a reason for his change in testimony, which, if believed, could arguably support a finding that Green's recantation was genuine" under the first prong of *Larrison*. *Ferguson II*, 779 N.W.2d at 560. We also concluded, applying the second prong of *Larrison*, that Ferguson had alleged sufficient facts in his petition that, if proven, would show that the jury " 'might have found [him] not guilty if [Green] had not testified.' " *Ferguson II*, 779 N.W.2d at 561 (quoting *State v. Turnage*, 729 N.W.2d 593, 599 (Minn. 2007)). Accordingly, we reversed the postconviction court and remanded for an evidentiary hearing. *Id.* at 562.

The postconviction court held an evidentiary hearing. At the hearing, Green refused to testify and asserted his Fifth Amendment right against self-incrimination. In lieu of Green's testimony, Ferguson moved to admit Green's affidavit into evidence under the hearsay exception for statements against the declarant's interest. *See* Minn. R. Evid. 804(b)(3). The State opposed Ferguson's motion, arguing that Green's affidavit lacked the requisite indicia of trustworthiness for admission under Rule 804(b)(3). Because Green's affidavit alleges that the police pressured or coerced Green to implicate Ferguson in the shooting, the court permitted Minneapolis Police Sergeant Christopher Thomsen to testify about his interview with Green to assist the court in determining the trustworthiness of Green's affidavit.

Following the hearing, the postconviction court concluded that Green's affidavit is inadmissible hearsay because it "is not corroborated by circumstances clearly indicating trustworthiness." The court alternatively concluded that, even if Green's affidavit were admissible, Green's recantation is not genuine because it "contradicts the overwhelming weight of the evidence at trial and the testimony of [Sergeant] Thomsen regarding Affiant Green's interview." Accordingly, the court denied Ferguson's second postconviction petition.

## II.

The first question presented by this case is whether the postconviction court erred when it concluded that Green's affidavit is inadmissible hearsay. We review a postconviction court's decision to admit or exclude evidence for an abuse of discretion, *see Woodruff v. State*, 608 N.W.2d 881, 885 (Minn.2000), and we will not set aside a postconviction court's factual findings unless they are clearly errone-

ous, *see Dukes v. State*, 621 N.W.2d 246, 251 (Minn.2001).

■ Generally, an out-of-court statement made by a nonparty is hearsay and is inadmissible to prove the truth of the matter asserted. Minn. R. Evid. 801(c), 802. Ferguson asserts that Green's affidavit is admissible under the hearsay exception for a statement made against the declarant's interest under Minn. R. Evid. 804(b)(3).[1] To qualify as a statement against a declarant's penal interest, the statement must meet the following requirements:

> First, the court must determine if the declarant was unavailable to testify at trial. Second, the court must determine that the statement must "at the time of its making ... so far [tend] to subject the declarant to civil or criminal liability ... that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Third, the court must scrutinize the statements to avoid violating the Confrontation Clause.

*State v. Tovar*, 605 N.W.2d 717, 723 (Minn. 2000) (citations omitted). Fourth, with respect to a statement "tending to expose the declarant to criminal liability and offered to exculpate the accused," the statement "is not admissible unless the corroborating circumstances clearly indicate the trustworthiness of the statement." Minn. R. Evid. 804(b)(3).

Applying the four requirements of Rule 804(b)(3), the postconviction court concluded that Green's affidavit was inadmissible hearsay because it was "not corroborated by circumstances clearly indicating trustworthiness." Specifically, the court observed that the affidavit "contradicts the overwhelming weight of the evidence at trial and the testimony of [Sergeant] Thomsen regarding the time, manner, and content of Green's *Scales* interview." We conclude that the postconviction court did not abuse its discretion in excluding the affidavit under Rule 804(b)(3).

■ When determining whether the "corroborating circumstances" requirement of Rule 804(b)(3) has been satisfied, courts have considered the following factors: (1) whether other evidence corroborates the facts in the hearsay statement; (2) the extent to which the hearsay statement is consistent with the declarant's prior testimony and other statements; (3) the relationship between the declarant and other witnesses and parties, including the defendant; (4) whether the declarant has reason to fabricate the statement; (5) the overall credibility and character of the declarant; and (6) the timing of the statement. *See, e.g., Riley v. State*, 819 N.W.2d 162, 169–70 (Minn.2012) (evaluating the other evidence in the case); *State v. Richardson*, 393 N.W.2d 657, 666–67 (Minn. 1986) (assessing the other evidence presented at trial and the declarant's relationship with the appellant); *State v. Renier*, 373 N.W.2d 282, 285 (Minn.1985) (examining the overall credibility of the declarant and the relationships of the parties involved in the case); *State v. Higginbotham*, 298 Minn. 1, 5, 212 N.W.2d 881, 883 (1973) (analyzing the close relationship between the recanting declarant and the appellant and whether the declarant had reason to fabricate the statement); *see also United States v. Bobo*, 994 F.2d

---

1. Ferguson alternatively asserts that we ordered the admission of Green's affidavit by referring to it as "evidence" in *Ferguson II*, 779 N.W.2d at 558. But our passing reference to Green's affidavit as "evidence" in *Ferguson II* was descriptive, not prescriptive: it described only the character of the affidavit itself, not whether the affidavit was admissible under the Minnesota Rules of Evidence. Indeed, the affidavit's admissibility under the Rules of Evidence was not before us in *Ferguson II*.

524, 528 (8th Cir.1993) (discussing the factors for courts to consider, including the statement's timing and the overall credibility of the declarant, in determining whether a hearsay statement is sufficiently trustworthy). Although it is unnecessary to consider each of these six factors in every case, they nonetheless serve as guidance for courts when determining whether an exculpatory statement made against a declarant's penal interest is sufficiently trustworthy to be admissible. *See Richardson*, 393 N.W.2d at 666–67 (examining several factors in concluding that the hearsay statement was not trustworthy); *see also United States v. Hooks*, 848 F.2d 785, 797 (7th Cir.1988) (stating that the factors underlying a determination of the trustworthiness of a hearsay statement are merely "guidelines"). The trustworthiness of a hearsay statement under Rule 804(b)(3) depends on the totality of the circumstances, and the relevance of each of the six factors will vary depending on the facts of each case.

In this case, the record supports the postconviction court's determination that Ferguson failed to establish corroborating circumstances that clearly indicated the trustworthiness of Green's affidavit. With respect to the first two factors, the evidence in the record, including Green's trial testimony, fails to corroborate many of the statements in Green's affidavit. For example, the affidavit states that Green told the police that Ferguson was not with him and that he "told the police that the first time." But Ferguson does not identify, and the record does not reflect, *any* evidence that corroborates these assertions in Green's affidavit. At the postconviction hearing, Sergeant Thomsen testified that Green never denied that Ferguson was involved in the shooting. In fact, aside from Green's first version of the events in which he claimed to know *nothing* about the shooting, each of Green's subsequent statements implicated Ferguson. Not only are many of the assertions in the affidavit uncorroborated, but Green's trial testimony, Green's statements to the police, and the trial testimony of Judonna Parker and other witnesses also contradict Green's statement in the affidavit that Ferguson was not present at the shooting.

Ferguson challenges the postconviction court's factual findings with respect to whether Green's hearsay statement is consistent with the other evidence in the record. More specifically, Ferguson argues that Sergeant Thomsen's testimony at the evidentiary hearing corroborates Green's assertion that the police told him that he would lose his son if he did not "give the police JERMAINE FERGUSON." To be sure, Sergeant Thomsen testified that a police officer told Green that, if he wanted to see his son, he needed to tell the police that Ferguson and Hudson committed the offense. But the corroboration of a single fact in Green's affidavit does not render the affidavit trustworthy as a whole, particularly when numerous other facts in the affidavit are inconsistent with the evidence in the record.

Ferguson also points to other evidence in the record, including Sergeant Thomsen's testimony at the evidentiary hearing, to argue that Green's initial identification of a different individual, L.G., as a person involved in the shooting corroborates Green's affidavit. Green's initial identification of L.G., however, does not corroborate the affidavit because Green initially told the police that *both* Ferguson and L.G. were involved in the shooting, which suggests that L.G.'s involvement in the shooting would not preclude Ferguson's participation. Moreover, Green's affidavit does not mention L.G. or identify an alternative perpetrator; it states only that Ferguson was not involved. In sum, Ferguson's arguments are insufficient to

establish that the postconviction court clearly erred in finding that contradictory evidence in the record, including Green's trial testimony, weighed against the trustworthiness of the affidavit.

The postconviction court's findings on the third, fourth, and fifth factors provide additional support for the court's determination that Green's affidavit is not trustworthy. In addressing the circumstances surrounding the creation of the affidavit, the postconviction court found that Green's affidavit "is not credible," that Green "will say whatever appears to be in his best interests," and that Green's recantation is an attempt to "appease" Ferguson. The evidence in the record supports the court's findings. At trial, Green testified that he "didn't want [Ferguson] involved" because Ferguson "is [his] guy," which reveals a close relationship between Ferguson and Green and a motive for Green to fabricate the recantation to assist Ferguson in obtaining his release from prison.[2] *See Higginbotham*, 298 Minn. at 5, 212 N.W.2d at 883 (affirming the exclusion of an exculpatory hearsay statement made against the declarant's penal interests, in part because the declarant had a close relationship with the defendant and likely fabricated the exculpating statement "out of a desire to free his close friend" from prison). Moreover, in discussing Green's overall credibility, the court found that "Green is a liar" who will say whatever benefits him—a finding that is adequately supported by the frequency with which Green

altered his story about the shooting in the months leading up to Ferguson's trial and during the trial itself.

In arguing more generally that the postconviction court should have admitted Green's affidavit into evidence, Ferguson claims that the affidavit is inherently trustworthy because the evidence of Ferguson's involvement in the shooting is either weak or not credible. More specifically, Ferguson asserts that Parker's trial testimony is not trustworthy and that none of the other eyewitnesses (other than Green) identified Ferguson. Although Ferguson challenges the strength and credibility of the evidence presented at trial that *contradicts* Green's affidavit, Ferguson fails to identify evidence presented at trial that *corroborates* Green's affidavit. Stated more directly, even if we agreed with Ferguson that the evidence supporting his convictions was weak, that would not preclude Green from fabricating a recantation.

We therefore conclude that the postconviction court did not abuse its discretion in excluding Green's affidavit as inadmissible hearsay because the affidavit lacked the requisite "corroborating circumstances" to be admissible under Minn. R. Evid. 804(b)(3). Because Ferguson failed to present any other admissible recantation evidence at the evidentiary hearing, we further conclude that the court did not abuse its discretion when it denied Ferguson's witness-recantation claim.[3]

---

2. Ferguson disputes the postconviction court's finding that the recantation is "obviously an attempt by Green to appease Petitioner Ferguson and *his family*." (Emphasis added.) While nothing in the record supports the court's finding that Green submitted the affidavit to appease Ferguson's family, the record, including Green's trial testimony, supports the portion of the court's finding relating to Ferguson because Green had a motive to fabricate the recantation to please Ferguson, whom Green identified as "[his] guy."

The close relationship between Green and Ferguson draws into doubt the veracity of Green's affidavit.

3. In light of the foregoing conclusion, we need not, and do not, decide whether Green's affidavit, if admissible, would warrant a new trial under the *Larrison* test. *See Pippitt*, 737 N.W.2d at 226–27 & n. 5 (citing *Larrison*, 24 F.2d at 87–88).

### III.

◼ The second question presented by this case is whether Ferguson was denied the effective assistance of counsel during the postconviction proceedings because his counsel failed to call additional witnesses to testify in support of Green's affidavit.

◼ The United States and Minnesota Constitutions guarantee a criminal defendant a right to the effective assistance of counsel in a criminal proceeding. U.S. Const. amend. VI; Minn. Const. art. 1, § 6; *see also State v. Wright,* 719 N.W.2d 910, 919 (Minn.2006). The Supreme Court of the United States has held, however, that the constitutional right to counsel guaranteed by the Sixth Amendment to the United States Constitution, which applies to criminal defendants in state proceedings through the Fourteenth Amendment, does not extend to state postconviction proceedings. *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). Accordingly, because the Sixth Amendment right to counsel does not attach in state postconviction proceedings, the Supreme Court has held that a postconviction petitioner "cannot claim constitutionally ineffective assistance of counsel in [state postconviction] proceedings." *Coleman v. Thompson,* 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *accord Schleicher v. State,* 718 N.W.2d 440, 445–46 (Minn. 2006).

We have interpreted the right to counsel under the Minnesota Constitution more broadly to guarantee a criminal defendant the right to counsel for a first postconviction petition if the defendant did not pursue a direct appeal. *Deegan v. State,* 711 N.W.2d 89, 98 (Minn.2006). We also have held, however, that a defendant who has been represented by counsel on direct appeal has no right under the Minnesota Constitution to the assistance of counsel— effective or otherwise—in a subsequent postconviction proceeding. *Barnes v. State,* 768 N.W.2d 359, 364 (Minn.2009); *Schleicher,* 718 N.W.2d at 446.

Here, because Ferguson received the assistance of counsel during his direct appeal, neither the United States Constitution nor the Minnesota Constitution entitles him to the effective assistance of counsel during his second postconviction proceeding. Accordingly, Ferguson's ineffective-assistance-of-counsel claim fails as a matter of law.

### IV.

For the foregoing reasons, we affirm the postconviction court's denial of Ferguson's petition for postconviction relief.

Affirmed.