*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0707**

State of Minnesota,
Respondent,

vs.

Bradley James Richards,
Appellant.

**Filed June 8, 2015
Affirmed
Halbrooks, Judge**

Freeborn County District Court
File No. 24-CR-13-788

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Craig S. Nelson, Freeborn County Attorney, David J. Walker, Assistant County Attorney, Albert Lea, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

Liz Kramer, Adine Momoh, Special Assistant Public Defenders, Minneapolis, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Hooten, Judge; and Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HALBROOKS**, Judge

On appeal from his conviction of fleeing a peace officer in a motor vehicle,[1] appellant argues that the district court improperly excluded a written statement as inadmissible hearsay and that the cumulative effect of the district court's errors and the state's prosecutorial misconduct deprived him of a fair trial. We affirm.

**FACTS**

On May 3, 2013, a lieutenant with the Albert Lea police department observed a vehicle that he believed was associated with drug-related activity outside a residence also connected to narcotics sales. The lieutenant followed the vehicle in an unmarked police car, and the vehicle began to speed. A second officer used a radar gun to obtain a speed result of 41 in a 30 mile-per-hour zone. The lieutenant activated the police car's lights and siren. The vehicle accelerated to 45 or 50 miles per hour and did not stop in response to the lights and siren. The lieutenant continued to pursue the vehicle as it made a series of turns until it eventually came to a stop on a dead-end street.

The passenger quickly exited the vehicle and fled on foot. The driver then moved to the passenger seat. The lieutenant arrested the driver, later identified as appellant Bradley James Richards. The other officer pursued and eventually apprehended the passenger, identified as C.J. The officer went back the next day to search the area where he apprehended C.J. and found $641 in cash, drug paraphernalia, and pills that contained

---

[1] Richards is not challenging his speeding conviction that arose out of the same incident and jury trial.

hydrocodone. Photographs were taken of the vehicle and the area where C.J. was apprehended. The state charged Richards with one count of fleeing a peace officer in a motor vehicle, in violation of Minn. Stat. § 609.487, subd. 3 (2012), and one count of speeding, in violation of Minn. Stat. § 169.14, subd. 2(a) (2012).

Before trial, Richards moved the district court to exclude the evidence found where C.J. was apprehended and the evidence of Richards's prior felony convictions. The district court admitted the evidence found near the location of C.J.'s arrest, finding that it had "some limited relevance" and was "neutral" evidence. The district court also admitted Richards's prior convictions for impeachment purposes but ruled that they would only be referred to as unspecified "felony convictions." Richards also moved the district court to not allow the lieutenant to testify that he had previously observed the same vehicle engaged in narcotics-related activities at a different location. The district court allowed the lieutenant's testimony "to give his full explanation of what raised his suspicions regarding this vehicle."

At trial, the prosecutor called the lieutenant and the officer to testify. The lieutenant testified to his pursuit and arrest of Richards and stated that Richards told him that C.J. thought that there was an active warrant for his arrest, did not want Richards to stop the car, and "was threatening [Richards] with the metal baton." The officer testified to his pursuit and apprehension of C.J. and stated that he found the money, drugs, and paraphernalia at the scene the following morning.

Richards called C.J. to testify, but after speaking with an attorney, C.J. asserted his Fifth Amendment right and declined to testify. Richards then offered a written statement

3

by C.J. as a statement against interest under Minn. R. Evid. 804(b)(3). The district court did not admit C.J.'s written statement, finding that Richards failed to provide independent corroborating evidence to guarantee the statement's trustworthiness.

Richards testified that C.J. "started freaking out" and told him to keep driving when the lieutenant activated the lights and siren. Richards stated that C.J. "tried to grab the wheel and put his foot over the thing to try to press on the gas." Richards testified that he felt threatened and was afraid of what C.J. would do if he pulled over.

During closing argument, Richards's counsel characterized the police's role as "looking for reasonable suspicion . . . [and] probable cause," and stated, "These are much, much, much lower standards" than proof beyond a reasonable doubt. On rebuttal, the prosecutor responded, "Of course, [the police] don't want to arrest an innocent person. . . . There is no reason for you to think that [the lieutenant] was somehow unprofessional or improper in the way he approached this case. He wanted to arrest a guilty person." Richards moved for a curative instruction. The district court denied the motion, finding that the prosecutor did not vouch for the officers and that any confusion regarding the state's burden of proof would be covered by the jury instruction on reasonable doubt.

The jury returned guilty verdicts on both counts. Before sentencing, Richards filed a post-verdict motion for a new trial. Richards argued that the district court should grant a new trial because the district court (1) improperly excluded C.J.'s written statement, (2) should have given a curative instruction after the prosecutor committed misconduct, (3) improperly allowed the lieutenant to testify about previously observing

4

the vehicle in an area known for drug activity, and (4) should not have admitted the evidence found where C.J. was apprehended. The district court denied the motion for a new trial and sentenced Richards to 17 months in prison, staying imposition of that sentence for three years. This appeal follows.

## D E C I S I O N

### I.

Richards argues that the district court should have admitted C.J.'s written statement as a statement against interest under Minn. R. Evid. 804(b)(3). "Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). On review, Richards bears the burden of establishing that the district court abused its discretion and that he suffered prejudice. *Id.*

Richards called C.J. as a witness, and C.J. asserted his Fifth Amendment right to not testify. Richards then offered a written statement by C.J. as a statement against interest. C.J.'s handwritten statement reads: "I [C.J.] told brad richards not to stop [and] put my foot on the gas and when he got the car stopped I jumped out of car and took off running again stopped him from pulling over right away." The district court found that the statement was not sufficiently corroborated to guarantee its trustworthiness and excluded it.

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Minn. R. Evid. 801(c). Generally, hearsay is not admissible unless it meets a recognized exception under the rules of evidence. Minn. R. Evid. 802. One

5

exception to the hearsay rule is when the declarant is unavailable as a witness and the statement is "so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Minn. R. Evid. 804(b)(3). "A statement tending to expose the declarant to criminal liability and offered to exculpate the accused" is only admissible under this exception if "corroborating circumstances clearly indicate the trustworthiness of the statement." *Id.*; *see also Dobbins v. State*, 845 N.W.2d 148, 152 (Minn. 2013) (discussing Minn. R. Evid. 804(b)(3)), *cert. denied*, 134 S. Ct. 1913 (2014).

When determining whether a statement against interest is sufficiently corroborated, we consider six factors:

> (1) whether other evidence corroborates the facts in the hearsay statement; (2) the extent to which the hearsay statement is consistent with the declarant's prior testimony and other statements; (3) the relationship between the declarant and other witnesses and parties, including the defendant; (4) whether the declarant has reason to fabricate the statement; (5) the overall credibility and character of the declarant; and (6) the timing of the statement.

*Ferguson v. State*, 826 N.W.2d 808, 813 (Minn. 2013).

Richards argues that his own testimony corroborated the statement. The district court ruled that Richards's own testimony, without more, could not corroborate the statement because "the independent corroborating evidence has to be something independent of [Richards]." In an effort to provide independent corroborating evidence, Richards's brother, N.R., testified outside the presence of the jury. N.R. stated that C.J.

6

told him that he prevented Richards from stopping the vehicle and asked N.R. how to "put a statement in." N.R. stated that C.J. was not under duress when he was talking to him. But N.R. admitted that he was not present when C.J. wrote the statement and that he did not know when or where C.J. wrote the statement. The district court ruled that Richards failed to provide the type of corroborating evidence necessary to demonstrate that the statement was trustworthy because both Richards and his brother had strong self-interests in corroborating C.J.'s statement.

"The purpose of the corroborating evidence requirement is to protect against the possibility that a statement will be fabricated to exculpate the accused." *Riley v. State*, 819 N.W.2d 162, 169 (Minn. 2012). Therefore, the district court properly required more corroboration than the accused's own testimony to establish that the statement was trustworthy. Similarly, N.R. had a self-interest in exculpating his brother. In addition, N.R. was not present in the vehicle during the incident or when C.J. wrote the statement. Therefore, the district court properly ruled that N.R.'s testimony did not provide the necessary independent corroborating evidence.

The district court also found that the photographs of the vehicle did not corroborate C.J.'s statement that he "put [his] foot on the gas" because the photographs show:

> [a] McDonald's pop glass sitting in that center console clearly undisturbed. I just can't fathom how a person could have climbed over that center console, stepped on that gas pedal, as described, without somehow disturbing that. That would corroborate it for me if that pop glass was crushed or if that straw was bent sideways or something.

7

Richards argues that the district court abused its discretion by weighing the evidence. But the district court must find that there is independent evidence corroborating a statement before it can admit the statement under rule 804(b)(3). Thus, the district court did not improperly weigh the evidence; instead, it "properly assumed the duty of determining whether there had been a sufficient showing of trustworthiness to admit the statement into evidence." *See State v. Jackson*, 655 N.W.2d 828, 834-35 (Minn. App. 2003) (stating that while the district court cannot assess the credibility of witnesses in making a 804(b)(3) determination, it must look at the evidence to determine whether the evidence corroborates the statement), *review denied* (Minn. Apr. 15, 2003).

We conclude that the district court did not abuse its discretion by excluding C.J.'s statement under the statement-against-interest exception to the hearsay rule because Richards has not shown that the statement is "trustworthy by independent corroborating evidence that bespeaks reliability." *See Miles v. State*, 840 N.W.2d 195, 203 (Minn. 2013).

Richards argues for the first time on appeal that C.J.'s statement is admissible under the residual hearsay exception articulated in Minn. R. Evid. 807 and that the district court's exclusion of C.J.'s statement violated his due-process right to present a meaningful defense. Because Richards did not raise either of these arguments to the district court, he has waived them on appeal, and we will not address them. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996).

8

## II.

Richards argues that the cumulative effect of the district court's other evidentiary errors and the prosecutor's misconduct deprived him of a fair trial. Richards contends that the district court abused its discretion by (1) admitting evidence of drugs, money, and drug paraphernalia found where C.J. was apprehended; (2) allowing testimony that the lieutenant had previously observed the vehicle in narcotics-related activities; (3) admitting his prior felony convictions for impeachment; and (4) failing to give a curative instruction after the prosecutor committed misconduct.

**Admission of Drugs, Money, and Paraphernalia**

Richards argues that the evidence found near the location of C.J.'s arrest should have been excluded because it was irrelevant and highly prejudicial. We review a district court's evidentiary rulings for an abuse of discretion, and Richards has the burden of proving both that the district court abused its discretion and that prejudice resulted. *Amos*, 658 N.W.2d at 203.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. Relevant evidence is generally admissible, but it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Minn. R. Evid. 402, 403. "When balancing the probative value against the potential prejudice, unfair prejudice is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage."

9

*State v. Swinger*, 800 N.W.2d 833, 839 (Minn. App. 2011) (quotation omitted), *review denied* (Minn. Sept. 28, 2011).

Here, the district court found that the evidence had some relevance:

> It does show that there were some activities that [maybe] Defendant might have been afraid to be associated with and further it does, I think, show a complete picture of the incident and the . . . completion of [law enforcement's] investigation. It's clearly tied . . . directly to the event itself, at least, based on all of the circumstantial evidence.

The district court also found that the evidence was "neutral" because it supported both the state's burden of proving that Richards intended to flee and Richards's defense theory that C.J. forced him to flee.

The record supports the district court's conclusion. The lieutenant testified on direct examination that Richards stayed in the vehicle until he was arrested and that Richards could not have placed the drugs, money, and paraphernalia in the field where they were found. During cross-examination of the officer, Richards's counsel asked, "So if anybody put those items out in that field, it couldn't have been Mr. Richards, right?" And the officer answered, "Correct." Because the officers' testimony clearly indicates that C.J.—not Richards—placed the evidence in the field, we conclude that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice and the district court did not abuse its discretion by admitting the evidence.

**Testimony that Lieutenant Previously Observed Vehicle in Narcotics-Related Area**

Richards argues that the district court should not have allowed the lieutenant to testify that he had seen a "known drug user" get in and out of the vehicle in a Walmart

10

parking lot a week and a half prior to Richards's arrest because the probative value of the testimony was substantially outweighed by the danger of unfair prejudice. We review the district court's ruling for an abuse of discretion. *See id.* at 838.

The prosecutor argued that the testimony was relevant to prove an essential element of Richards's fleeing charge: that the lieutenant was acting in lawful discharge of an official duty when he followed Richards's vehicle. "[His] interest in the vehicle is that he related it to an incident that he saw in the Walmart parking lot about a week and a half prior when he saw a person who he knew to be a methamphetamine user sitting in a parked car in the Walmart parking lot." The prosecutor further argued, "I don't think it's realistic to . . . assume that the jury will just give the officer the benefit of the doubt and assuming that he was doing what he was supposed to do. I think I have to prove that." The district court allowed the testimony, reasoning that the state was required to prove that the officer was lawfully performing his duties and that "it's certainly fair for [the lieutenant] to explain his heighten[ed] suspicions based on prior—ah, innocent and innocuous acts that though might connect this vehicle to drug activity."

The lieutenant testified that he had previously observed the vehicle in the Walmart parking lot and saw a "known meth user" get into the vehicle. But he also testified that he did not observe any criminal behavior at that time and did not see who was driving the vehicle on that occasion. Because the lieutenant's testimony does not directly link Richards to a drug crime, his testimony supports the district court's conclusion that the probative value of the evidence was not substantially outweighed by the danger of unfair

11

prejudice. We conclude that the district court did not abuse its discretion by allowing the lieutenant to testify to his previous observations concerning the same vehicle.

**Prior Felony Convictions**

Richards argues that the district court erred by admitting evidence of his prior felony convictions for impeachment purposes. We review a district court's ruling on the impeachment of a witness by prior conviction for a clear abuse of discretion. *State v. Ihnot*, 575 N.W.2d 581, 584 (Minn. 1998). Whether the probative value of the prior convictions outweighs their prejudicial effect is a matter within the discretion of the district court. *State v. Graham*, 371 N.W.2d 204, 208 (Minn. 1985). The district court may permit evidence of a witness's past conviction for impeachment purposes if the crime was punishable by imprisonment in excess of one year and the district court determines that the probative value of admitting the evidence outweighs its prejudicial effect. Minn. R. Evid. 609(a)(1). When making this determination, the district court considers five factors:

> (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*State v. Jones*, 271 N.W.2d 534, 537-38 (Minn. 1978).

After the prosecutor and Richards's counsel each thoroughly analyzed the *Jones* factors during their arguments for and against admission of the prior convictions, the district court ruled that it would admit the prior felony convictions for impeachment

12

purposes "but they can only be referred to as felony convictions. We will not use the labels." The district court reasoned:

> Frankly, there is so much . . . drug behavior type evidence swirling about this and this is not a drug crime that . . . if we allow too much of that in, we are creating prejudice and we are inviting the jury to speculate beyond what—ah, the Defendant is charged with. So I'm just—I'm going to leave out reference to controlled substance crimes. I do find, however, that it's fair for the jury to know the whole person.

Richards argues that the district court erred by failing to make a record of the *Jones*-factors analysis. The Minnesota Supreme Court has ruled "that a district court should demonstrate on the record that it has considered and weighed the *Jones* factors." *State v. Swanson*, 707 N.W.2d 645, 655 (Minn. 2006). "[F]ailure to place the analysis on the record makes review of the district court's exercise of discretion more speculative and difficult. Put another way, absent an analysis on the record of the *Jones* factors, an appellate court does not know the reasons for the district court's decision." *Id.* But when a district court errs "by failing to make a record of the *Jones* factor analysis," appellate courts review those factors as applied to the matter to determine whether the error was harmless. *Id.*

*Impeachment value of the prior crime*

Richards's prior convictions do not directly relate to his truthfulness because they do not involve crimes of dishonesty. But a prior felony conviction has impeachment value by helping the jury see the "whole person" of the defendant and better evaluate his or her truthfulness. *State v. Gassler*, 505 N.W.2d 62, 66-67 (Minn. 1993). Here, the district court stated that it was admitting the prior convictions to allow the jury to see

13

Richards's "whole person." Under *Gassler*, this is a proper basis for determining that the prior convictions have impeachment value.

*Date of conviction and Richards's subsequent history*

Convictions occurring within ten years of trial are presumptively not stale. Minn. R. Evid. 609(b); *Gassler*, 505 N.W.2d at 67. Here, all of Richards's convictions occurred within ten years of his trial. "Because [the] convictions show a pattern of lawlessness and because the convictions were all less than 10 years old, the dates of the convictions do not weigh against admission of the prior convictions." *See Swanson*, 707 N.W.2d at 655.

*Similarity of the past crime to the crime charged*

"The more similar the alleged offense and the crime underlying a past conviction, the more likely it is that the conviction is more prejudicial than probative." *Id.* Richards concedes that the prior convictions were not similar to the charged offense. In addition, the district court only allowed the jury to hear that Richards had prior felony convictions; the jury was not permitted to hear what type of offenses Richards had previously committed. These circumstances limit the prejudicial effect of the prior convictions and weigh in favor of admission. *See State v. Hill*, 801 N.W.2d 646, 652-53 (Minn. 2011) (holding that a party may impeach a witness with an unspecified felony conviction).

*Importance of Richards's testimony and centrality of credibility*

If credibility is a central issue in the case, the fourth and fifth *Jones* factors weigh in favor of admission of the prior convictions. *Swanson*, 707 N.W.2d at 655; *Ihnot*, 575 N.W.2d at 587. Here, the jury had to determine whether to believe Richards's testimony.

14

Because credibility was a central issue, the fourth and fifth *Jones* factors weigh in favor of admission.

We conclude that the district court's failure to make a thorough record of its *Jones*-factors analysis was harmless because the *Jones* factors weigh in favor of admitting the prior unspecified felony convictions.

**Failure to Give Curative Instruction After Prosecutorial Misconduct**

Richards contends that the district court erred by failing to give a curative instruction in response to the prosecutor's misconduct during closing arguments. Richards argues that the prosecutor improperly created confusion regarding the reasonable-doubt standard and impermissibly vouched for the police investigation. Richards requested a curative instruction explaining reasonable suspicion and probable cause and how those standards differ from proof beyond a reasonable doubt. The district court found that the prosecutor did not vouch for the police investigation and stated that it would be giving an instruction on reasonable doubt, so "that will cover" any confusion caused by the prosecutor's statement regarding the standard of proof.

*Prosecutorial misconduct*

When determining whether prosecutorial misconduct occurred during a closing argument, we "consider the closing argument as a whole rather than focus[ing] on particular phrases or remarks that may be taken out of context or given undue prominence." *State v. Jackson*, 714 N.W.2d 681, 694 (Minn. 2006) (quotations omitted). The prosecutor "has the right to present to the jury all legitimate arguments on the evidence, to analyze and explain the evidence, and to present all proper inferences to be

15

drawn therefrom." *State v. Williams*, 586 N.W.2d 123, 127 (Minn. 1998). The prosecutor has "considerable latitude" in making a closing argument and need not make a colorless argument. *Id.* Impermissible vouching occurs "when the government implies a guarantee of a witness's truthfulness, refers to facts outside the record, or expresses a personal opinion as to a witness's credibility." *State v. Lopez-Rios*, 669 N.W.2d 603, 614 (Minn. 2003) (quotations omitted). But a prosecutor is permitted to argue that particular witnesses are or are not credible. *Id.* "Misstatements of the burden of proof also constitute prosecutorial misconduct." *State v. Fields*, 730 N.W.2d 777, 786 (Minn. 2007).

Because Richards requested a curative instruction immediately after the prosecutor's rebuttal argument, we review for harmless error. *Cf. State v. Morton*, 701 N.W.2d 225, 234 (Minn. 2005) (applying plain-error review when a defendant fails to request curative instructions). If the claim involves "unusually serious prosecutorial misconduct, there must be certainty beyond a reasonable doubt that misconduct was harmless." *State v. Yang*, 774 N.W.2d 539, 559 (Minn. 2009). But if the claim involves less serious prosecutorial misconduct, we review "to determine whether the misconduct likely played a substantial part in influencing the jury to convict." *Id.* Caselaw has not consistently applied the "unusually serious" versus "less serious" analysis. *See State v. Wren*, 738 N.W.2d 378, 390 n.9 (Minn. 2007) (discussing the inconsistent standards applied in various cases). Because we conclude that any misconduct here is harmless beyond a reasonable doubt, we need not determine whether the prosecutor engaged in

16

unusually serious or less serious misconduct. *See State v. Carridine*, 812 N.W.2d 130, 146, 150 (Minn. 2012).

Richards argues that the prosecutor vouched for his witnesses by asserting that the police had already determined guilt beyond a reasonable doubt and that the officers wanted to arrest a guilty person. The state argues that the prosecutor was correcting a statement made in Richards's closing argument.

In closing argument, Richards's counsel stated:

> [The lieutenant is] looking for reasonable suspicion. He's looking for probable cause. These are much, much, much lower standards. . . . [T]hey are looking for what evidence is there that—that will support a charge. They aren't looking for proof beyond a reasonable doubt at this point. . . . Officers cannot work that way. So they go on a much lower standard. They—they find a conclusion. They'll get the evidence that matches the conclusion.

On rebuttal, the prosecutor stated that Richards's counsel's criticism "that the officer has a low standard; he doesn't care what happened here; only the defendant wants to tell us the truth" was unfounded.

> Of course, [the police] wanted to know exactly what happened. Of course, they don't want to arrest an innocent person. To say that somehow he had some weird lower standard, whatever that is supposed to mean, and that he just investigated to that point, or was interested in the facts to that point, and then somehow he drew a conclusion and then ignored everything that—that didn't corroborate the conclusion—that does not apply to this case. There is no reason for you to think that [the lieutenant] was somehow unprofessional or improper in the way he approached this case.
> He wanted to arrest a guilty person. He wanted to arrest a person that he saw committing a crime in his very presence. Why would any of us think that he was there just

> pursuing someone . . . because he drew a conclusion right away, and then pursued that conclusion. It makes no sense. There is no reason to think that that happened in this case.

Taken in the context of both attorneys' closing arguments, the prosecutor was not guaranteeing the officers' truthfulness, referring to facts outside the record, or expressing a personal opinion as to the officers' credibility. *See Lopez-Rios*, 669 N.W.2d at 614. Instead, the prosecutor was arguing that the officers were credible and rebutting Richards's counsel's argument that the police "get the evidence that matches the conclusion." Therefore, the prosecutor did not commit misconduct by impermissibly vouching for the officers.

Richards also argues that the prosecutor confused the jury by stating that police do not operate under a lower standard than proof beyond a reasonable doubt. But Richards mischaracterizes the prosecutor's statement. The prosecutor said that officers do not *want* to arrest an innocent person and *want* to arrest a guilty person. This is different than stating that the officers would only arrest someone who is guilty beyond a reasonable doubt. And the prosecutor's statement about "some weird lower standard" was to rebut Richards's argument that police officers draw a conclusion and ignore all evidence contrary to that conclusion because they operate under a "much, much, much lower standard."

In addition, the prosecutor, Richards's counsel, and the district court repeatedly explained to the jury that the state had the burden of proving each element beyond a reasonable doubt. Therefore, even if the prosecutor's statement created confusion, we conclude that any error was harmless beyond a reasonable doubt because the clear and

18

thorough instructions on the burden of proof would have eliminated any confusion caused by the prosecutor's statements.

*Curative instruction*

We will uphold a district court's decision regarding jury instructions absent an abuse of discretion. *State v. Houston*, 654 N.W.2d 727, 734 (Minn. App. 2003), *review denied* (Minn. Mar. 26, 2003). Here, the district court determined that the prosecutor's statement did not amount to vouching and that it would "be giving the instruction of what . . . reasonable doubt is, and I will be giving the instruction that arguments by counsel are not evidence. And that will cover it."

The district court provided the following instructions, in part, to the jury:

> The defendant is presumed innocent of the charge made. This presumption remains with the defendant unless and until the defendant has been proven guilty beyond a reasonable doubt. That the defendant has been brought before the Court by the ordinary processes of the law and is on trial should not be considered by you as in any way suggesting guilt. The burden of proving guilt is on the state.
>
> . . . .
>
> Proof beyond a reasonable doubt is such proof as ordinary—ordinarily prudent men and women would act upon in their most important affairs. A reasonable doubt is a doubt based upon reason and common sense.
>
> . . . .
>
> . . . [T]he arguments or other remarks of an attorney are not evidence.
>
> . . . If an attorney's argument contains a statement of the law that differs from the law I give you, disregard the statement.

19

Because the district court's instructions were thorough and clear, we conclude that the district court did not abuse its discretion by declining to provide an additional curative instruction.

**Cumulative Error**

When "the number of errors and the seriousness of some of them" render this court "unable to determine whether the jury based its verdict on the admissible evidence and the reasonable inferences derived therefrom," we may determine that an appellant was deprived of a procedurally fair trial. *See State v. Mayhorn*, 720 N.W.2d 776, 792 (Minn. 2006). To find cumulative error, we must find multiple errors that, when combined, are more prejudicial than each of the errors separately. *State v. Penkaty*, 708 N.W.2d 185, 200 (Minn. 2006). Because we conclude that the district court did not commit any error—except for failing to provide a record of its *Jones*-factors analysis— we conclude that Richards was not denied a fair trial.

**Affirmed.**